PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

------------------------------------------

No. 99-10945

------------------------------------------

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 10, 2000
THOMAS K. KAHN
CLERK

D. C. Docket No. 97-02058-CIV-T-17B

AMERICAN CHARITIES FOR REASONABLE
FUNDRAISING REGULATION, INC.,
THE CREATIVE ADVANTAGE, INC., et al.,

                                        Plaintiffs-Appellants,

    versus

PINELLAS COUNTY, a political subdivision of the
State of Florida, NUGENT WALSH, as chairperson
of the Charitable Solicitations Board of Pinellas County, et al.,

                                        Defendants-Appellees.

-------------------------------------------------------------------

Appeal from the United States District Court
for the Middle District of Florida

-------------------------------------------------------------------

**(August 10, 2000)**

Before EDMONDSON and MARCUS, Circuit Judges, and STROM*, District Judge.

_____

*       Honorable Lyle E. Strom, U.S. District Judge for the District of Nebraska, sitting by
        designation.

PER CURIAM:

Plaintiffs challenge a local Pinalles County ordinance regulating the solicitation of charitable contributions. The challenge is based on the Commerce Clause, the First Amendment, and the Fourteenth Amendment. The district court granted summary judgment for Defendant County concluding that the Ordinance was facially constitutional. We affirm in part; but because the district court failed to address Plaintiffs' as-applied challenge, we remand for consideration of that claim.

## BACKGROUND

Pinellas County, Florida (Defendant County) passed Ordinance No. 93-106 (the "Ordinance"), pursuant to Fla. Stat. § 496.421, which grants authority to counties to enact ordinances regulating charitable solicitation. The ordinance, codified in Pinellas County Code §§ 42-266 to -344, regulates persons who solicit charitable contributions within the County.

The Ordinance requires fund-raising consultants and paid solicitors[1] to register with the County before performing services for their clients, who are charities soliciting within the County.[2] The Ordinance also prohibits a charity from soliciting in the County if the charity contracts with a professional solicitor before that person has been issued the required permit. And it prohibits professional fund-raising consultants from soliciting in conjunction with a client-charity until that charity has registered with the County.[3]

---

[1]Compare Pinellas County Code § 42-266 (defining "professional fundraising consultant" as "any person who is retained by a charitable organization or sponsor for a fixed fee to plan, advise, consult, or prepare material for solicitation of contributions, but who does not manage, conduct, or carry on any fundraising activity or solicit contributions, or employ, procure, or engage any compensated person to solicit contributions and who does not at any time have custody or control of contributions"), with id. (defining "professional solicitor" as any person "who for compensation, performs for a charitable organization or sponsor any service in connection with which contributions are or will be solicited by the compensated persons . . . in connection with the solicitation of contributions for or on behalf of a charitable organization").

[2]See Pinellas County Code § 42-291(a) ("[n]o charitable organization, sponsor, commercial co-venturer, professional fundraising consultant, federated fundraising organization, professional solicitor, or other person . . . shall solicit contributions in the county by any means . . . without first registering and having been issued a charitable solicitations permit")

[3]Pinellas County Code § 42-321 provides:
(b) It shall be a violation of this article for any professional solicitor, professional fundraising consultant, commercial co-venturer, federate fundraising agency or sponsor to solicit on behalf of or in connection with any affiliated or client charity before that charity or sponsor has registered and been issued a charitable solicitations permit as required in this article.
(c) It shall be a violation of this article for any charity to contract with any professional solicitor, professional fundraising consultant, commercial co-venturer, federated fundraising agency, or sponsor for the purpose of raising or soliciting funds for the charity or sponsor before the professional solicitor, professional fundraising consultant, commercial co-venturer, federated fundraising agency, or sponsor has been issued a charitable solicitations permit by the department as required by this article.

3

Plaintiffs are American Charities for Reasonable Fundraising Regulation, Inc. ("American Charities"), the Creative Advantage, Inc. ("TCA"), and Norman W. Leahy ("Leahy").[4]  Plaintiffs sought relief in district court to enjoin the enforcement of the Ordinance and to grant a declaratory judgment finding the Ordinance unconstitutional as violative of the First Amendment, the Fourteenth Amendment Due Process Clause, and the negative Commerce Clause.  The district court denied relief, concluding that the Ordinance does not facially violate the Constitution, and granted summary judgment for Defendant.  Plaintiffs appeal.

DISCUSSION

We review the district court's grant of summary judgment de novo.  See Sammy's of Mobile, Ltd. v. City of Mobile, 140 F.3d 993, 995 (11th Cir. 1998).  And we review de novo a constitutional challenge to a statute.  See Gay Lesbian Bisexual Alliance v. Pryor, 110 F.3d 1543, 1546 (11th Cir. 1997) (constitutionality of a statute is a question of law reviewed de novo).

---

[4]American Charities for Reasonable Fundraising Regulation is a membership association which brings this action on behalf of its members, who include professional fund-raising consultants.  The Creative Advantage, Inc., is a full service direct mail fund-raising agency which consults with charities on fund-raising but does not directly solicit.  Leahy is a copywriter, based in Virginia, who produces copy for charities.

4

The district court properly determined that Plaintiffs' facial challenges to the Ordinance were unavailing. See American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, 32 F. Supp.2d 1308 (M.D. Fla. 1998); see also American Target Advertising v. Giani, 199 F.3d 1241 (10th Cir. 2000). The district court erred, however, in determining that Plaintiffs' due process as-applied challenge was not ripe for review. We conclude that the as-applied claim was ripe and that the County's application of the Ordinance to Plaintiffs may violate the Due Process Clause of the Fourteenth Amendment.

STANDING

The district court did not address Plaintiffs as-applied due process challenge because the court concluded that this claim was not ripe: the County had not sought to enforce the Ordinance against Plaintiffs. We conclude Plaintiffs offered sufficient evidence of a threat of enforcement to assert their as-applied challenge.

While pre-enforcement review is the exception, "[w]hen the plaintiff has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder, he 'should not be required to await and undergo a criminal

5

prosecution as the sole means of seeking relief.'" Babbitt v. UFW, 99 S. Ct. 2301, 2309 (1979); see also Jacobs v. Florida Bar, 50 F.3d 901, 904 (11th Cir. 1995) ("A plaintiff stating that he 'intends to engage in a specific course of conduct arguably affected with a constitutional interest, . . . does not have to expose himself to enforcement to be able to challenge the law.'"). To establish their standing to bring an as-applied challenge, Plaintiffs need to demonstrate that a "credible threat of an injury exists," not just a speculative threat which would be insufficient for Article III purposes. Kirby v. Siegelman, 195 F.3d 1285, 1290 (11th Cir. 1999). We have written that this standard can be met by showing that either "(1) [plaintiff] was threatened with prosecution; (2) prosecution is likely; or (3) there is a credible threat of prosecution." Jacobs, 50 F.3d at 904 (applying standard to conclude that plaintiffs had standing to bring as-applied challenge).

Plaintiffs offered sufficient proof of a credible threat of prosecution in this case. Plaintiffs offered the affidavit of Marilyn Price, president of Plaintiff TCA; the affidavit states that she had written the County asking whether her company had to register for a permit although TCA does not directly solicit contributions. In response, John Wood of the Regulatory Section of the Department of Consumer Protection for the County called. Wood said that, if a nonprofit mails into the County, it is mandatory for that organization and its professional fund-raising consultant (that is,

6

TCA) both to register. Wood also explained that the penalty for noncompliance was a civil injunction and possibly a $500.00 fine or imprisonment.[5] Price stated that, as a direct result of this conversation, she has asked TCA's clients not to mail into the County, and TCA has refused to enter into consulting agreements with charities that mail into the County.

Defendants argue this affidavit is insufficient to show a threat of prosecution. Plaintiffs, however, did receive a response from someone "with the knowledge and authority to speak for the [County]" about registration.[6] Digital Properties, Inc. v. City of Plantation, 121 F.3d 586, 590 (11th Cir. 1997) (determining challenge not ripe because plaintiff had not applied for zoning permit and relied on statement that city "does not allow such use" made by one non-supervisory employee at zoning department to confirm plaintiff's assumption that zoning scheme applied to his

---

[5]Plaintiffs also offered the affidavit of Raymond Grace, the president of Creative Direct Response ("CDR"), who stated that his company was contacted by the County and told that it must register and pay the fee as a professional fund-raising consultant. He was informed that, if his company failed to register, it could no longer advise on clients' direct mail appeals and that the company's clients could not conduct direct mail appeals in the County. And in responding to Leahy's inquiry, the County informed Leahy that he must register, even though he would only be providing copy to charities and would not be involved in telemarketing or other direct solicitations, if he would be providing copy to charities which mail into the County.

[6]The same John Wood, who informed TCA of its obligation to register, was cited as the source of Defendant's response to Plaintiffs' interrogatories. The response said that Plaintiffs would be required to register if their client charities solicited in the County and Plaintiffs perform services, or intend to perform services, for charities soliciting in Pinellas County.

7

proposal).[7] And Creative Direct Response ("CDR"), another fund-raising consulting organization, received a letter from the County telling it to register. In addition, Defendant, in response to requests for admissions, admitted that TCA, Leahy, and ACFRFR -- based on the evidence Defendant's had -- are required by the County "to register as a PFC and pay a fee if its clients send charitable solicitations by mail into Pinellas County."

These circumstances assure us that this case "grows out of a genuine dispute and is not a contrivance prompted solely by a desire to enforce constitutional rights." International Society for Krishna Consciousness of Atlanta v. Eaves, 601 F.2d 809, 819 (5th Cir. 1979) (concluding justiciable challenge to airport solicitation ordinance applicable to plaintiffs in which penalty was loss of and inability to reapply for a solicitation permit); see also Graham v. Butterworth, 5 F.3d 496 (11th Cir. 1993) (concluding credible threat of prosecution because plaintiff intended to engage in protected conduct, which state seemed to proscribe).[8] Because we have determined

_____

[7]This case is materially different from Digital Properties, which involved a zoning permit and in which the court determined that plaintiff's as-applied challenge was not ripe because it was "founded upon [plaintiff's] anticipated belief that [city] would interpret [ordinance] in such a way as to violate [plaintiff]'s First Amendment rights." 121 F.3d at 590-91.

[8]Defendants say this evidence is not sufficient because the Ordinance is not criminal. The Ordinance itself, however, provides that violations shall be punishable as provided in section 1-8 of the Pinellas County Code. Section 1-8(c) states: except as otherwise provided, "a person convicted of a violation of this Code shall be punished by a fine not to exceed $500.00 or by imprisonment in the county jail for a term not exceeding 60 days, or by both."

8

that Plaintiffs as-applied due process challenge is ripe, we now address the merits of that claim.

## DUE PROCESS CLAUSE

Plaintiffs say their activities, or lack thereof, in Pinellas County are insufficient for the County to apply the Ordinance to them in accordance with due process. Plaintiffs may be correct. But because we cannot determine from the record the extent of the contacts and whether they are sufficient, we remand for such a determination.

A state's legislative jurisdiction is circumscribed by the Due Process Clause: "There must be at least some minimal contact between a State and the regulated subject before it can, consistently with the requirements of due process, exercise legislative jurisdiction." Hellenic Lines Ltd. v. Rhoditis, 90 S. Ct. 1731, 1737 n.2 (1970) (Harlan, J., dissenting); accord Adventure Communications Inc. v. Kentucky Registry of Election Finance, 191 F.3d 429, 435-36 (4th Cir. 1999). The inquiry into whether sufficient legislative jurisdiction exists is similar to that explored in determining sufficient minimum contacts for the purposes of assessing whether a court can exercise personal jurisdiction consistent with due process, or whether a court can

9

apply a state's own law under choice-of-law analysis to a case consistent with due process.  See Adventure Communications, 191 F.3d at 436 (noting a substantial overlap in analysis); Quill Corp. v. North Dakota, 112 S. Ct. 1904, 1909 (1992) (stating that due process "requires some definite link, some minimum connection, between state and the person, property or transaction it seeks to tax").[9]

To determine legislative jurisdiction, that is, to confirm that the application of the County's regulations to Plaintiffs does not offend due process, we look to choice-of-law and personal jurisdiction analyses.  When choice-of-law issues arise in court, to apply a state's substantive law in accordance with due process, "that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." Allstate Ins. Co. v. Hague, 101 S. Ct. 633, 640 (1981).  And, when a court is considering its personal jurisdiction, the exercise of jurisdiction does not offend due process if the pertinent party has "certain minimum contacts with [the jurisdiction] such that the maintenance of the [action] does not offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 66 S. Ct. 154,

---

[9]Though the inquiries are similar, some difference exists between adjudicative jurisdiction and legislative jurisdiction.  See Adventure Communications, 191 F.3d at 435 (noting that adjudicative jurisdiction "concerns the power of the state to resolve a particular dispute through its court system" and legislative jurisdiction "involves the authority of a state to make its law applicable to persons or activities").

10

158 (1945); see Allstate Ins. Co., 101 S. Ct. at 642 n. 23 (stating "both inquiries are often closely related and to a substantial degree depend upon similar considerations"); Adventure Communication, 191 F.3d at 437 (noting that the existence of minimum contacts is "significant factor" in determining if application of state's substantive law is constitutional).

Applying these standards to the question before us now, we ask whether sufficient contacts exist between the Plaintiffs and the County, "creating state interests such that it would not be fundamentally unfair to subject" the Plaintiffs to the County's registration requirements. Adventure Communication, 191 F.3d at 437. Therefore, a "minimum contacts" inquiry is necessary for determining whether the County's exercise of legislative jurisdiction, in this case, offends due process.

The regulated party must have performed some act by which it "purposefully avails itself of the privilege of conducting activities within the [County]." Burger King v. Rudzewicz, 105 S. Ct. 2174, 2184 (1985). But the unilateral act of a third party is not sufficient to create the requisite contacts. See id. at 2183; see also Madara v. Hall, 916 F.2d 1510, 1517 (11th Cir. 1990) (foreseeability required to exercise jurisdiction is "not the ability to see that the acts of third parties may affect the forum, but rather that the [actor's] own purposeful acts will have some effect in the forum").

11

Defendant has indicated that a consultant who advises a client who solicits in the County is required to register.[10]

But the record, in this case, seems to show only that Plaintiffs assist charities that send national mailings to the general public: Plaintiffs themselves do not send mailings to the public. Plaintiffs aver that they do not solicit, do not handle the funds, and are not paid on a percentage of the contributions basis.[11] Nothing apparently indicates that Plaintiffs purposefully aid the solicitation of funds from the citizens of Pinellas County, in particular as opposed to general solicitations conducted more or

---

[10]The district court determined that it was the overt act of solicitation and not advising which triggered the requirement that the professional fund-raising consultant obtain a permit. Plaintiffs, however, argue they do not solicit in the County nor purposefully contribute to the solicitation of funds in the County. The district court should explore on remand the extent of Plaintiffs' solicitation, or lack thereof, in the County.

In addition, the district court noted that the Ordinance itself requires a professional fund-raising consultant to obtain a permit when it "solicits contributions in the county by any means." But the definition of professional fund-raising consultant provided for in the Ordinance limits the consultant category to persons who do not solicit, but instead "plan, advise, consult or prepare material for solicitation." Therefore, acts much less than overt solicitation could require consultants to obtain a permit, and the Ordinance has been so interpreted by the County in this case.

[11]For example, Plaintiffs state, in their briefs, that Leahy only writes copy: "Once he sells his copy, his involvement with that particular project ends and he moves on to the next one. He does not design the graphics, layout, or the other visual aspect of solicitation pieces. He does not maintain mailing lists. He does not help his clients select mailing lists. He does not mail letters. He does not target solicitations."

less nationally.[12]  An abstract, indirect, and unaimed level of involvement with the County would not be sufficient for the County to regulate Plaintiffs.[13]

The circumstances in this case seem very different from those found to be sufficient for due process purposes in the case of American Target Advertising, 199 F.3d at 1255, in which Utah law was allowed to be applied to a Virginia charitable consultant.  In that case, the court determined that the Virginia plaintiff purposefully directed its efforts toward residents of Utah in particular:  for example, consultant would suggest a list of potential Utah donors.  See id.  In this case, Defendant has not alleged that Plaintiffs purposefully direct their efforts to, or specifically advise on solicitations aimed at, Pinellas County.  See Asahi Metal Indus. v. Superior Court of Cal., Solano County, 107 S. Ct. 1026, 1032 (1987) (stating that even if defendant was

---

[12]For example, Defendant's admissions state that TCA, Leahy, and ACFRFR are required by the County to register if its clients send charitable solicitations by mail into the County.  In response to interrogatories, Defendant stated that consultants are not required to register if they do not represent clients that do not solicit charitable contributions in the County.

[13]In addition, Defendant claims it is proper to require Plaintiffs to register because their compensation must come from contributions received from their charity clients.  Without more, an assertion that Plaintiffs were paid with general funds of their clients which funds at one time were contributions from someplace is insufficient to establish legislative jurisdictional minimum contacts.  The district court cited Interfase Marketing, Inc. v. Pioneer Technologies Group, Inc., 774 F. Supp. 1355, 1358 (M.D. Fla. 1991), for the proposition that merely receiving a benefit from the residents of the jurisdiction should subject a party to the court's jurisdiction.  But in that case a number of "contacts" existed between the jurisdiction and defendant: defendant traveled to the jurisdiction, conducted business there, and permitted its affiliate to solicit potential customers for it in the jurisdiction.  See id. ("[Defendant] clearly seeks the benefits of marketing their product in Florida through their relationship with [affiliate].").

13

aware product would eventually reach forum state via stream of commerce this awareness does not constitute an act purposefully directed toward forum state); see also SEC v. Carrillo, 115 F.3d 1540, 1545 (11th Cir. 1997) (noting that it is well established that advertising "reasonably calculated to reach the forum" may be purposeful availment, as can direct solicitation mailings); Associated Transport Line, Inc. v. Productos Fitosanitarios Proficol El Carmen, S.A., 197 F.3d 1070, 1075 (11th Cir. 1999) (noting that "awareness that product will enter state is not enough to satisfy due process--not the kind of purposeful activity required").[14] For now at least, we can not say that Plaintiffs have sufficient contacts with the County to regulate them under this Ordinance, consistent with due process.

The district court did not reach Plaintiffs' as-applied challenge. And, the district court should tackle the question before we attempt to do so finally. Because unanswered questions remain on the extent of Plaintiffs' contacts with the County, we REMAND the case to the district court for a determination, not inconsistent with this opinion, of whether Defendant's threatened application and enforcement of the

---

[14]And just having some contract with a registered charity without more is not sufficient, under the Constitution, to subject these other entities to regulation and registration by the Ordinance. See Borg-Warner Acceptance Corp. v. Lovett & Thorpe, Inc., 786 F.2d 1055, 1059 (11th Cir. 1986) ("'[m]erely entering into a contract with a forum resident does not provide the requisite contacts between a [party] and the forum state.'"); Sea Lift, Inc. v. Refinadora Costarricense de Petroleo, S.A., 792 F.2d 989, 993 (11th Cir. 1986) ("Nor does the existence of a contract between the foreign defendant and a resident of the forum state automatically amount to 'purposeful availment.'").

Ordinance violates due process. Otherwise, we AFFIRM the district court's judgment.

AFFIRMED IN PART,

VACATED AND REMANDED IN PART.