AMERICAN CHARITIES FOR REASONABLE FUNDRAISING REGULATION, INC., the Creative Advantage, Inc., and Norman W. Leahy, Plaintiffs,

v.

PINELLAS COUNTY, a political subdivision of the State of Florida, Nugent Walsh, as chairperson of the Charitable Solicitations Board of Pinellas County, and Sheryl Lord, as Director of Consumer Protection of Pinellas County, Defendants.

No. 897CV2058TTGW.

United States District Court, M.D. Florida. Tampa Division.

Nov. 13, 2001.

---

Alison M. Steele, George Karl Rahdert, Rahdert, Steele & Bryan, P.A., St. Petersburg, FL, Clifford Perlman, Seth Perlman, Edward N. Mazlish, Perlman & Perlman, Geoffrey W. Peters, Geoffrey W. Peters, P.C., Vienna, VA, Charles H. Nave, Charles H. Nave, P.C., Alexandia, VA, for plaintiffs.

Carl E. Brody, Jr., Pinellas, County Attorney's Office, Clearwater, FL, for defendants.

### POST–REMAND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

KOVACHEVICH, Chief Judge.

This cause is before the Court on remand from the United States Court of Appeals for the Eleventh Circuit and on the following:

| Dkt. | 59 | United States District Court, Decision |
|---|---|---|
| Dkt. | 72 | United States Court of Appeals, Order |
| Dkt. | 85–90 | Motion for Summary Judgment, Memorandum in Support, and Exhibits (Plaintiffs) |
| Dkt. | 98 | Response (Defendants) |
| Dkt. | 99 | Reply (Plaintiffs) |
| Dkt. | 92–94 | Motion for Summary Judgment, Memorandum in Support, and Exhibit (Defendants) |
| Dkt. | 97 | Response (Plaintiffs) |
| Dkt. | 100 | Reply (Defendants) |

### I. STANDARD OF REVIEW ON SUMMARY JUDGMENT

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."

The plain language of Rule 56(c) mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no "genuine issue of material fact" since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is "entitled to judgment as a matter of law" because the non-moving party has failed to make a sufficient showing on an essential element of the case with respect to which that party has the burden of proof. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motion and identifying those portions of the record which demonstrate the absence of genuine issues of material fact. *See id.*

That burden can be discharged by "showing...that there is an absence of evidence to support the non-moving party's case." *See id.* at 323, 325, 106 S.Ct. 2548.

Once the moving party meets its burden, the nonmoving party must go beyond the pleadings and designate specific facts in affidavits, or in the depositions, answers to interrogatories, and admissions, if any, that show a genuine issue of material fact. *See id.* at 324, 106 S.Ct. 2548.

Issues of fact are " 'genuine' only if a reasonable jury considering the evidence presented could find for the non-moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those which will affect the outcome of the trial under governing law. *See id.* at 248, 106 S.Ct. 2505. In determining whether a material fact exists, the court must consider all the evidence in a light most favorable to the non-moving party. *See Sweat v. Miller Brewing Co.,* 708 F.2d 655, 656 (11th Cir.1983). All doubt as to the existence of a genuine issue of material fact must be resolved against the moving party. *See Hayden v. First Nat'l Bank of Mt. Pleasant,* 595 F.2d 994, 996–97 (5th Cir., 1979) (quoting *Gross v. Southern Railway Co.,* 414 F.2d 292, 297 (5th Cir.1969)).

Although factual disputes preclude summary judgment, the "mere possibility that factual disputes may exist, without more, is not sufficient to overcome a convincing presentation by the party seeking summary judgment." *See Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980). When a party's response consists of "nothing more than a repetition of his conclusional allegations," summary judgment is not only proper, but it is required. *Morris v. Ross,* 663 F.2d 1032, 1034 (11th Cir.1981).

## II. BACKGROUND

The following factual allegations are takes from the docket entries listed above.

On December 7, 1993, Defendant Pinellas County, (Defendant County) a political subdivision of the State of Florida, passed Ordinance No. 93–106 (the Ordinance), pursuant to Florida Statute § 496.421, which grants counties the authority to enact ordinances that regulate charitable solicitations. The Ordinance is codified in Pinellas County Code §§ 42–266 to 42–344. The purpose of the Ordinance is to require registration and public disclosure of persons who solicit charitable contributions within the County. The Ordinance seeks to make the information available to the public to prevent fraud or misrepresentation in the solicitation and use of contributions.

The Ordinance regulates persons who solicit charitable contributions within the county. To comply with the Ordinance's provisions, persons who wish to solicit funds in Defendant County must register with Defendant County, file a sworn application with the required information, pay an application fee, maintain specified records, comply with reporting requirements, and refrain from engaging in fraud or conduct that constitutes a prohibitive act. Further, as the Eleventh Circuit acknowledged:

> The Ordinance requires fund-raising consultants and paid solicitors to register with the County before performing services for their clients, who are charities soliciting within the County. The Ordinance also prohibits a charity from soliciting in the County if the charity contracts with a professional solicitor before that person has been issued the required permit. And it prohibits professional fund-raising consultants from soliciting in conjunction with a client-

charity until that charity has registered with the County.

(Dkt.72).

Defendant County's jurisdiction under the Ordinance embraces the territory within the legal boundaries of Defendant County. The Ordinance also provides a thirty (30) day time period for granting or denying permits, and, provides specific procedures governing the denial, suspension, or revocation of a permit.

Florida Statutes Chapter 496 also regulate the solicitation of charitable contributions within the State of Florida. The purpose and intent behind Florida's charitable solicitation laws are similar to that behind the Ordinance.

Professional fundraisers who are required to register with the State of Florida are also required to register with Defendant County. Applicants seeking a permit with Defendant County must register with the State of Florida prior to submitting Defendant County's application. Pinellas County Code § 42–292(b)(8) requires applicants to show proof of compliance with the State of Florida requirements by attaching a copy of the registration or exemption statement issued by the Florida Division of Consumer Protection. Both Florida and Defendant County charge a variable fee for initial and renewal permits.

On August 25, 1997, Plaintiffs, American Charities for Reasonable Fundraising Regulation, Inc. (Plaintiff ACFRFR), The Creative Advantage, Inc. (Plaintiff TCA), and Norman W. Leahy (Plaintiff Leahy) (collectively Plaintiffs), brought suit in this Court.

Plaintiff ACFRFR is a Delaware corporation having its principal place of business in the District of Columbia. Plaintiff ACFRFR appears on its own behalf, as the assignee of a claim, as well as in its representational capacity on behalf of various professional fundraising consultants, who consult with national charities and sell their services in interstate commerce to charitable clients located throughout the United States.

Plaintiff ACFRFR asserts that it was formed to look at regulation of charities and to reduce unnecessary, improper, and overly extensive regulation. Plaintiff ACFRFR asserts that it is specifically representing entities that: (a) are consultants to national charities, (b) do not have any connection to Defendant County, and (c) have client charities that may, in the course of soliciting contributions nationally, send charitable solicitation letters into Defendant County. Moreover, the entities that Plaintiff ACFRFR represents and their client charities (d) do not purposefully target Defendant County.

Plaintiff TCA maintains that it is a Virginia corporation having its principal place of business in Virginia. Plaintiff TCA describes itself as a direct mail fundraising agency that consults with nonprofit organizations concerning direct mail campaigns.

Plaintiff Leahy is an individual who resides in Virginia. He describes himself as a copywriter who plans to use his copywriting skills by providing direct mail fundraising letters and public education letters to charities.

Plaintiff TCA and Plaintiff Leahy appear in this lawsuit as a result of having been threatened with prosecution by Defendant County for failing to register with it, if one of their charitable clients subsequently solicits into Defendant County.

Plaintiffs sought relief from this Court to prevent enforcement of the Ordinance and to request a declaratory judgment finding that the Ordinance was unconstitutional, based on the First Amendment, the Fourteenth Amendment Due Process Clause, and the negative Commerce Clause. This Court denied Plaintiffs' motion for summary judgment and granted

Defendants' motion for summary judgment, concluding that the Ordinance was facially constitutional.

Plaintiffs appealed this Court's judgment to the United States Court of Appeals for the Eleventh Circuit. The Eleventh Circuit affirmed in part, vacated and remanded, in part, finding that this Court correctly determined that the facial challenges to the Ordinance were unavailing but erred in determining that the due process as-applied claim was not ripe for review. The Eleventh Circuit concluded that the as-applied claim is ripe and that Defendant County's application of the Ordinance to Plaintiffs may violate the Due Process Clause of the Fourteenth Amendment.

Therefore, the Eleventh Circuit remanded for consideration of the as-applied claim since it could not determine from the record the extent of the contacts and whether they are sufficient. On remand, the issue before this Court is whether the threatened application and enforcement of the Ordinance violates due process.

On April 11, 2001, the parties filed motions for summary judgment and memorandums in support. On May 2, 2001 the parties filed responses to the motions, and the respective replies were filed on May 14, 2001.

Plaintiffs allege that the record is replete with sworn testimony proving that Plaintiffs have no contact with Defendant County and never purposefully directed activities toward Defendant County. Further, Plaintiffs assert that Defendants have failed to produce any evidence of Plaintiffs soliciting in, or having any other contacts with, Defendant County. Therefore, Plaintiffs argue that the Ordinance violates due process and is unconstitutional as applied to Plaintiffs.

Defendants allege that Plaintiffs are the primary party to the solicitation. Further, Defendants allege that the cumulation of services provided by Plaintiffs, and the effect that this has on the citizens of Defendant County, shows sufficient minimum contacts and purposeful availment such that Plaintiffs were provided fair notice that they may be subject to regulation in Defendant County. Therefore, Defendants argue that Plaintiffs should be subject to the legislative jurisdiction of the Ordinance.

The parties agree that there is no material dispute as to the facts of this case. Therefore, the issue before this Court is whether the facts indicate that Plaintiffs have sufficient minimum contacts to justify Defendant County's exercise of legislative jurisdiction.

## III. *DISCUSSION*

In the remand order, the Eleventh Circuit discussed the legal standard to be applied in this case. In its opinion, the Eleventh Circuit explained:

> To determine legislative jurisdiction, that is, to confirm that the application of the County's regulations to Plaintiffs does not offend due process, we look to choice-of-law and personal jurisdiction analyses... Applying these standards to the question before us now, we ask whether sufficient contacts exist between the Plaintiffs and the County, "creating state interests such that it would not be fundamentally unfair to subject" the Plaintiffs to the County's registration requirements... Therefore, a "minimum contacts" inquiry is necessary for determining whether the County's exercise of legislative jurisdiction, in this case, offends due process. The regulated party must have performed some act by which it "purposefully avails itself of the privilege of conducting activities within the [County]." But the unilateral act of a third party is not sufficient to create the requisite contacts. *American*

*Charities for Reasonable Fundraising Regulation, et al., v. Pinellas County, et al.,* 221 F.3d 1211, 1216 (11th Cir.2000) (citing to *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981), *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), *Adventure Communications, Inc. v. Kentucky Registry of Election Finance,* 191 F.3d 429 (4th Cir. 1999), and *Burger King v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). (Dkt.72).

This Court agrees with the parties that there is no genuine issue of material fact. Therefore, in making a determination about the minimum contacts at issue, a close examination of the record is necessary.

## A. *PRE–REMAND RECORD SHOWS NO MINIMUM CONTACTS*

The pre-remand record shows no evidence of minimum contacts. In its opinion, the Eleventh Circuit explained:

> But the record, in this case, seems to show only that Plaintiffs assist charities that send national mailings to the general public: Plaintiffs themselves do not send mailings to the public. Plaintiffs aver that they do not solicit, do not handle the funds, and are not paid on a percentage of the contributions basis. Nothing apparently indicates that Plaintiffs purposefully aid the solicitation of funds from the citizens of Pinellas County, in particular as opposed to general solicitations conducted more or less nationally. An abstract, indirect, and unaimed level of involvement with the County would not be sufficient for the County to regulate Plaintiffs.
>
> [J]ust having some contract with a registered charity without more is not sufficient, under the Constitution, to subject these other entities to regulation and registration by the Ordinance.
>
> For now at least, we can not say that Plaintiffs have sufficient contacts with the County to regulate them under this Ordinance, consistent with due process.

*American Charities,* 221 F.3d at 1217, 1218 n. 14, 1218.

In essence, the Eleventh Circuit placed the burden of showing contacts on Defendants. Therefore, if there is any evidence showing minimum contacts, it must be found in the post-remand record.

## B. *POST–REMAND RECORD SHOWS NO MINIMUM CONTACTS*

The discussion herein is limited to answering the allegations relevant to the issue on remand. After thoroughly considering whether the threatened application and enforcement of the Ordinance violates due process, this Court finds that the relevant portions of the post-remand record do not show sufficient minimum contacts to justify Defendant County's exercise of legislative jurisdiction over each Plaintiff.

### 1. *PLAINTIFF LEAHY*

Defendants allege that Plaintiff Leahy is not a valid plaintiff based on his acknowledgment that he is no longer in the business of copywriting for charitable organizations, except for two clients he has on the side.

Plaintiffs, on the other hand, allege that Plaintiff Leahy is a valid plaintiff since he testified that he does some copywriting work on the side. Plaintiffs assert that Plaintiff Leahy testified that he continues in the business of selling his services to charities and professional fundraising counsel.

This Court finds Defendants' argument without merit. The Eleventh Circuit has ruled that all Plaintiffs, including Plaintiff

Leahy, have standing in this case. *See American Charities*, 221 F.3d at 1214–15 n. 5–7.

## 2. *PLAINTIFFS COLLECTIVELY*

In determining whether Plaintiffs' activities, or lack thereof, are sufficient for Defendant County to apply the Ordinance to them, in accordance with due process, an examination of the record is essential.

Therefore, some relevant portions of the record will be summarized in the fact section below.

### a. *RELEVANT FACTS*

#### 1. Plaintiff TCA

The facts regarding Plaintiff TCA, for the most part, come from the testimony of Marilyn Price, president of TCA. Marilyn Price's sworn testimony indicates that Plaintiff TCA plans, creates, writes, and prepares or contracts for layouts and copy to be used in its clients' direct response programs. Further, Plaintiff TCA helps coordinate and develop its clients' direct response programs with emphasis on the process of educating the public about the need for the clients' programs. Marilyn Price's testimony indicates that Plaintiff TCA helps its clients in negotiating, arranging, and entering into agreements. Acting as an agent for its client, by entering in agreements on behalf of the client, Marilyn Price stated that the client has final approval. Plaintiff TCA suggests vendors to the client, but the client always retains the final authority to hire and compensate vendors.

Further, Marilyn Price's testimony indicates that Plaintiff TCA monitors the results of direct response programs, provides its clients with an analysis of progress, and advises its clients on finding and using mailing lists. Although it manages the mail program, Plaintiff TCA does not send mail, the charities send the mail. Marilyn Price clearly states that Plaintiff TCA does not solicit the public directly and does not exercise control over any money received from the direct mail campaigns.

Marilyn Price testified that Plaintiff TCA does not own or maintain donor lists, and it is paid based on the number and types of letters its clients ultimately send (not on a percentage of funds raised). When advising clients on a mailing, its recommendations regarding which groups to mail to, are based solely on recency of gift, amount of gift, and frequency of gift. Marilyn Price's sworn testimony further indicates that Plaintiff TCA has never based it recommendations on specific names, specific addresses, any particular demographic data, zip codes, or any factor other than gift recency, size, and frequency. Plaintiff TCA looked only at zip codes when a regulatory issue existed. Redacting zip codes costs the charity money because of the additional data processing and additional postage charged as a result of a break in the zip code sequence.

Marilyn Price clearly stated that Plaintiff TCA does not counsel its clients to target its mailings at particular counties, states, or regions. Plaintiff TCA mails nationally-it does not segment on a state or group or zip code basis. The testimony indicates that the client is only aware of successful past donations from a list as opposed to a part of the country.

Marilyn Price's sworn testimony indicates that Plaintiff TCA has had no contact or connection of any sort with Defendant County, aside from communications to inquire about whether it is required to register under the Ordinance.

#### 2. Plaintiff ACFRFR

The testimony of Raymond Grace, President of Creative Direct Response (CDR), provides the factual basis as to how Plaintiff ACFRFR's members conduct business and explains the general processes in-

volved. CDR is a direct mail marketing consulting firm and is a member of Plaintiff ACFRFR. CDR assigned its claim to Plaintiff ACFRFR. Raymond Grace's sworn testimony indicates that the primary service provided to charities by CDR is consulting, wherein, CDR recommends to charities how to use mail most effectively. CDR copywrites, designs packages, suggests mail plans, and analyzes the mailings. Further, CDR secures the best bids from qualified vendors, but the client makes the final decision on which vendor to use. The budget and design of the package is submitted to the client who agrees or disagrees with the selection, the size of the package, the colors, and which vendors have been chosen. The client then signs the budget and gives the consulting firm authority to execute the job on its behalf. Subsequently, the consultant writes the purchase orders on behalf of the client, orders the materials, and supervises the mailing program.

Raymond Grace indicated that CDR is not in the printing, letter shop, data processing, or envelope business. CDR recommends vendors to perform these services for the charities. Raymond Grace further testified that CDR does not maintain or own a donor list; but CDR does manage nonprofits' lists and provides names for them; designs the concept, layout, and content of the letters that go out for its clients; and creates a mail plan for its clients. CDR then monitors the results and makes sure that the plan is followed.

The clients' mailing list is reviewed by CDR, who makes professional determinations about it. It recommends which group is most likely to donate. When evaluating a nonprofit's donor file, CDR is given a report on the database that is organized by the size of the gift and by the most recent gift. This matrix only reports the amount of the gift and the date of the most recent gift. Raymond Grace testified

that that is the only information needed for CDR to do its job. At no point, while advising a client about his donor file or in making list recommendations, does CDR look at individual names or addresses, demographic data, or geographic data. In Raymond Grace's thirty (30) years of experience, CDR only looks at data on the amount of gift, frequency of gift, and recency of gift.

CDR then suggests which matrix boxes to mail and sends a purchase order to the data processing firm or the client if they are going to do it themself. The data processing vendor pulls off those matrix boxes on a tape, in zip order, and that tape is sent to the letter shop, the people who put the mail packages together and send out the actual mail. CDR never touches the tape.

Raymond Grace's testimony clearly indicates that CDR never recommends to a client that the client direct its mail toward any particular region. Raymond Grace stated that CDR does not target individuals, counties, or areas.

Raymond Grace testified that the only way CDR becomes aware of where a solicitation is sent is negatively, when it gets a situation like Pinellas County. Further, his sworn testimony clearly indicates that CDR does not have any contact with professional solicitors. He stated that CDR's clients do not advise CDR on where to solicit.

The testimony of Lee Cassidy, treasurer of ACFRFR and member of its board of directors, is also relevant to understanding the basis of this Court's decision. Lee Cassidy's sworn testimony indicates that ACFRFR members are charities and entities that operate in an advisory capacity for charities, similar to that of an advertising agency. Lee Cassidy stated that such entities are often referred to as "fundraising consultants." To his recollection, no

ACFRFR members are professional solicitors. Lee Cassidy stated that ACFRFR does not raise funds from the general public and does not contract with professional fundraising consultants to do its fundraising, that effort has been entirely voluntary.

Lee Cassidy testified that ACFRFR does not, itself, do any type of fundraising consulting or soliciting. ACFRFR joined this suit in a representational capacity and believes that the members, as opposed to the organization itself, are being harmed on a continuing basis by the Ordinance. ACFRFR is specifically representing entities that: (a) are consultants to national charities, (b) do not have any connection to Defendant County, whatsoever, and (c) have client charities that may, in the course of soliciting contributions nationally, send charitable solicitation letters into Defendant County. Moreover, the entities that Plaintiff ACFRFR represents and their client charities (d) do not purposefully target Defendant County, in any fashion. Further, ACFRFR, itself, does not have any contact whatsoever with Defendant County outside of those contacts made to initiate and prosecute this lawsuit.

### 3. Plaintiff Leahy

Plaintiff Leahy, testified that he is a copywriter, with a copywriting business on the side, in which Plaintiff Leahy writes text. Plaintiff Leahy's sworn testimony indicates that he does not send mail, solicit, handle funds, or own or maintain mailing lists. Further, Plaintiff Leahy stated that he is not in any way involved in targeting or directing solicitations toward particular individuals. As for compensation arrangements, Plaintiff Leahy testified that it varies from client to client but stated that he was never paid on a percentage of contribution basis. The record indicates that he does not know if any of his clients solicit contributions in Defendant County. The only contacts Plaintiff Leahy had with Defendant County have been through this lawsuit, through a letter he sent regarding whether he needed to register, and through the letter in response, which said that he did have to register.

### b. *ARGUMENTS AND ANALYSIS*

This section is limited to a determination of whether the record shows sufficient minimum contacts to justify Defendant County's exercise of legislative jurisdiction over Plaintiffs. Therefore, the Court will not discuss allegations and arguments that are irrelevant to the issue on remand.

1. **Plaintiffs do not advise where to send mailings; are not aware of where solicitations are mailed; do not have the ability to control where solicitations are sent; and are not sufficiently involved in the printing process to constitute minimum contacts.**

Defendants allege that Plaintiff TCA advises where, to which addresses, to send house and prospect mailing. Defendants claim that Plaintiffs direct where solicitations are sent and point to the fact that successful mailings breed further mailings. Further, Defendants allege that Plaintiff TCA is aware of where solicitations are sent because it acknowledged that common sense would tell them that some letters may end up in Defendant County. Also, Defendants assert that Plaintiffs acknowledge that the matrix system that they use directs the addresses to which solicitations are sent. Defendants assert that Plaintiffs are aware of where solicitations are sent because they focus their attention on jurisdictions that provide successful results. Defendants note that the demographics of Defendant County result in a disproportionate effect on its residents as compared to the effect on residents of less affluent jurisdictions.

Further, Defendants allege that Plaintiffs have the ability to control the location of individual solicitation parties. Defendants point to the fact that it is technically feasible for Defendant County to be omitted from the mailings. Defendants further allege that Plaintiff TCA is involved in the actual printing process through its role as the solicitor of bids for the charity.

Plaintiffs argue that the record clearly indicates that Plaintiffs do not advise charities on where to send solicitations. Plaintiffs assert that the facts listed above clearly establish that Plaintiffs never advise charities on where mailings should be sent. Plaintiffs claim that the record indicates that Plaintiffs would never know how many records correspond to addresses in Defendant County because they do not see the addresses, names, or any other information except the size, frequency, and date of the donation. Further, Plaintiffs assert that the record is clear that Plaintiffs do not even know how many residents of Defendant County respond to the mailing because they do not receive the mail, open it, count the money, or even hold the money. The only mailing information that Plaintiffs may see or use is a matrix indicating how many records on the list correspond to donations of a certain size and recency.

Plaintiffs also argue that even if they did advise charities on where to send mailings, which they do not concede, the charities would be the entities purposefully directing their solicitations into that jurisdiction and not the Plaintiffs. Therefore, Plaintiffs allege that Defendants' argument is baseless and does not even attempt to demonstrate any contact between Plaintiffs and Defendant County.

Further, Plaintiffs assert that they are not aware of where solicitations are mailed. Plaintiffs state that Defendants failed to make any citations to the record. Plaintiffs cite the record and indicate that the record contains sworn testimony that is contrary to the allegations of Defendants, indicating that Plaintiffs remain entirely unaware of where solicitations are mailed. Even if Plaintiffs concede, which they do not, that they were aware of where solicitations are mailed, Plaintiffs argue that Defendants still failed to establish sufficient minimum contacts. Plaintiffs argue that this Court should find in accordance with the Eleventh Circuit when is stated:

> Nothing apparently indicates that Plaintiffs purposefully aid the solicitation of funds from the citizens of Pinellas County, in particular as opposed to general solicitations conducted more or less nationally. An abstract, indirect, and unaimed level of involvement with the County would not be sufficient for the County to regulate Plaintiffs.

*American Charities*, 221 F.3d at 1217.

Moreover, Plaintiffs allege that they do not control where solicitations are sent. Marilyn Price testified in her deposition that by not being permitted to mail into Defendant County without registering, the client charity incurs additional expenses to extract Defendant County from its mailings. Further, the client charity's postage rate goes up since the nonprofit postage rate is based on discounts for strings of zip codes and a break in the zip code (pulling out an area) creates "a hole in the string" that results in increased postage rates. Unless a regulatory problem arises, Plaintiffs claim that they do not know what zip codes appear on mailing lists. Moreover, Plaintiffs argue that the charity's technical ability to order a data processing firm to remove zip codes does not constitute purposeful availment of the charitable goodwill of the citizens of Defendant County. Plaintiffs argue that Defendants failed to show that Plaintiffs "purposefully aid the solicitation of funds from citizens of Pinel-

las County, in particular as opposed to general solicitations conducted more or less nationally." *American Charities*, 221 F.3d at 1217.

This Court agrees with Plaintiffs' arguments and finds that the record is clear that Plaintiffs are not aware of where solicitations are mailed, they do not advise charities on where to send solicitations, and they do not control where solicitations are sent.

This Court further finds that Plaintiffs are not sufficiently involved in the actual printing process through its role as solicitor of bids for a charity. The facts clearly indicate that Plaintiffs' clients retain final authority.

In deciding whether sufficient minimum contacts exist to justify Defendant County's exercise of legislative jurisdiction over Plaintiffs, this Court is guided by the Eleventh Circuit's opinion for this case. As to foreseeability required to exercise jurisdiction, the Eleventh Circuit observed:

> [It] is not the ability to see that the acts of third parties may affect the forum, but rather that the actor's own purposeful acts will have some effect in the forum.

*American Charities*, 221 F.3d at 1216–1217.

Further, this Court agrees with the Eleventh Circuit when it stated:

> Nothing apparently indicates that Plaintiffs purposefully aid the solicitation of funds from the citizens of Pinellas County, in particular as opposed to general solicitations conducted more or less nationally. An abstract, indirect, and unaimed level of involvement with the County would not be sufficient for the County to regulate Plaintiffs.

*American Charities*, 221 F.3d at 1217.

Therefore, this Court agrees with Plaintiffs and finds that it is not foreseeable that Plaintiffs' own purposeful acts will have an effect in Defendant County. Further, in accordance with the Eleventh Circuit's opinion, this Court does not find that Plaintiffs purposefully aid in the solicitation from citizens of Defendant County in particular as opposed to general solicitations conducted more or less nationally. Therefore, this Court finds that Plaintiffs' level of involvement is unaimed and is not sufficient to justify Defendant County's legislative jurisdiction over Plaintiffs.

This Court finds that the record plainly shows that Plaintiffs are not involved to an extent that justifies Defendant County's exercise of legislative jurisdiction. Plaintiffs establish that the record clearly supports their arguments. Defendants failed to rebut this evidence and relied on mere conclusional allegations. Therefore, this Court finds Defendants' allegations without merit and summary judgment for Plaintiffs is not only proper, but it is required.

**2. Plaintiffs are not sufficiently involved; and are not involved in an agency relationship as Plaintiffs do not exercise a sufficient level of control to establish minimum contacts.**

Next, Defendants allege that given the extensive list of job responsibilities and services, Plaintiffs are the most involved parties to a solicitation. Defendants argue that Plaintiffs' acts are not unilateral. Rather, Defendants allege that Plaintiffs are the center and primary party to the solicitation, even more than the charity. Defendants allege that just because Plaintiffs close their eyes when the solicitations are mailed, this act is insufficient to insulate them from Defendant County's jurisdiction. Defendants allege that Plaintiffs (specifically Plaintiff TCA) are the primary party to the actual solicitation even though they attempt to shield themselves from

registration responsibilities by contracting out the responsibility for actually mailing the solicitation document. Hence, Defendants claim that such a separation is illusory. Defendants make note of the First Circuit's statement that, "[I]f *International Shoe* stands for anything it is that a truly interstate business may not shield itself from suit by a careful but formalistic structuring of its business dealings." *Benitez–Allende v. Alcan Aluminio Do Brasil, S.A.,* 857 F.2d 26, 30 (1st Cir.1988), *cert. denied,* 489 U.S. 1018, 109 S.Ct. 1135, 103 L.Ed.2d 196 (1989) (quoting *Vencedor Manufacturing Co. v. Gougler Industries,* 557 F.2d 886, 891 (1st Cir.1977)).

Defendants allege that as the agent to the charity, the fundraisers take on all the implements of being their principal. Defendants quote the testimony of Raymond Grace to allege that an agency relationship exists and that Plaintiffs maintain a high level of control: "[t]he client makes the decision on which vendor to use . . . [t]hey sign off the budget and give us authority to execute the job on their behalf." (Dkt.85). Defendants argue that, as Marilyn Price explained, her company is authorized to take unilateral action on behalf of its clients.

Further, Defendants state that the cumulation of services provided by Plaintiffs, and the effect that this has on the citizens of Defendant County, links Plaintiffs to Defendant County. Defendants argue that it is this cumulation of service that illustrates why Plaintiffs purposefully avail themselves of the privilege of conducting activities within Defendant County. Therefore, Defendants claim that these activities are not the unilateral acts of third parties, but are the acts of dual partners in a campaign. As such, Defendants argue that Plaintiffs should be aware that their activities will subject them to jurisdictional claims. As a result, Defendants argue

that such action would be fair under a due process analysis.

Defendants argue that these acts by Plaintiffs are not abstract, indirect, and unaimed as they involve citizens of Defendant County because the matrix scheme utilized by Plaintiffs is intended to exploit those who are most giving and have the ability to give. Therefore, Defendants assert that Plaintiffs should be subject to the legislative jurisdiction of Defendant County.

Plaintiffs, on the other hand, argue that they are not involved in the solicitation process. Plaintiffs point out that Defendants cite no evidence to support their allegations that Plaintiffs are the primary party to the solicitation and direct where solicitations are sent. Meanwhile, Plaintiffs assert that the record directly contradicts these allegations by showing that Plaintiffs do not solicit and do not direct solicitations to any geographical locations.

Further, Plaintiffs allege that they do not maintain an agency relationship with their clients as they do not exercise a sufficient level of control. Plaintiffs argue that the record clearly indicates that the services Plaintiffs provide are consulting services. Further, Plaintiffs assert that the element of control is completely missing in this case. Therefore, Plaintiffs claim that the record is clear that they do not have the ability to control where solicitations go.

Plaintiffs also claim that they are not carefully structuring their business to shield themselves from regulation by Defendant County. Plaintiffs point out that the record clearly indicates that Plaintiffs do not solicit. Plaintiffs assert that the record shows that, when they do consult with a charity on that charity's direct mail campaign, the letters always remain the property of the charity. Plaintiffs assert that the charity makes the solicitation and

collects any money raised. This is a standard consultant-client relationship, according to Plaintiffs. Plaintiffs argue that professional fundraising consultants were consulting with charities long before Defendant County enacted its Ordinance. Plaintiffs point out that Raymond Grace testified that he had been doing this work for thirty-two (32) years. Further, Plaintiffs argue that there has been no effort by Plaintiffs to modify their behavior to take advantage of a loophole in Defendant County's Ordinance. Plaintiffs allege that Defendant's have not identified any evidence to the contrary.

Plaintiffs assert that Defendants failed to address minimum contacts, the central issue in this case. They allege that, despite a new round of discovery, Defendants have failed to identify a single contact between a Plaintiff and Defendant County. Further, Plaintiffs assert that the record clearly indicates that no Plaintiff has any direct contact, let alone minimum contact, with Defendant County. Plaintiffs claim that Defendants have not produced any evidence contradicting any of the testimony or showing solicitation or other contact of any nature between Plaintiffs and Defendant County, sufficient to subject Plaintiffs to legislative jurisdiction.

Plaintiffs point out that the essential difference between fundraising consultants and professional solicitors is that the former do not solicit, or otherwise have any contact with the public, while the latter by their very nature systematically and regularly have contact with the person solicited.

Lastly, Plaintiffs allege that nothing Defendants have said or done in this case changes the basic facts in the pre-remand record. Plaintiffs assert that Defendants have failed to produce any evidence to contradict those facts. Moreover, Plaintiffs argue that Defendants cite no case that supports finding legislative jurisdiction over an out of state entity with absolutely no contacts with the jurisdiction in question.

This Court finds that no agency relationship exists and that Plaintiffs do not exercise a sufficient level of control because the facts clearly indicate that the client has final approval. Plaintiffs act only in obvious situations such as choosing the vendor whose turnaround time will meet the time required to fulfill the job or choosing the cheaper vendor given equal quality levels. The record reveals that it is the client's position to choose a vendor that will provide the turn-around time required to fulfill the job and to obtain services at the lowest possible price with an acceptable quality level. Further, the record reveals that the client retains final authority to hire and compensate vendors. Therefore, Defendants' argument is without merit.

This Court finds that Plaintiffs are not sufficiently involved in the solicitation process to justify Defendant County's exercise of legislative jurisdiction. This Court finds that the record is clear that sufficient contacts do not exist between Plaintiffs and Defendant County.

This Court previously determined that it was the overt act of solicitation, and not advising, which triggered the requirement that the consultant obtain a permit. This Court noted that the Ordinance requires a professional fundraising consultant to obtain a permit when it "solicits contributions in the County by any means." However, the Eleventh Circuit noted:

> [B]ut the definition of professional fundraising consultant provided for in the Ordinance limits the consultant category to persons who do *not* solicit, but instead "plan, advise, consult, or prepare material for solicitation."

*American Charities*, 221 F.3d at 1217 n. 10.

In applying this definition to Plaintiffs, this Court finds that Defendant County's application of the Ordinance is unreasonable and violates due process. Plaintiffs assert that they do not solicit in Defendant County, nor do they purposefully contribute to the solicitation of funds in the County. This Court agrees with Plaintiffs and finds that the record is clear that Plaintiffs do not purposefully avail themselves of conducting activities in Defendant County.

In deciding the minimum contacts inquiry, the Eleventh Circuit cited the holdings in *Adventure Communications, Inc. v. Kentucky Registry of Election Finance,* 191 F.3d 429 (4th Cir.1999), and *Allstate Ins. Co. v. Hague,* 449 U.S. 302, 101 S.Ct. 633, 66 L.Ed.2d 521 (1981).

The Eleventh Circuit cited *Adventure* for the proposition that the existence of minimum contacts is a "significant factor" in determining the constitutionality of the application of a state's substantive law.

Defendants argue that Plaintiffs seem to satisfy the standard set forth in *Adventure* because Defendants claim that Plaintiffs directly solicit through the mail to citizens of Defendant County. However, the better argument is that, unlike the Plaintiffs in *Adventure,* Plaintiffs do not have substantial and pervasive contacts. Rather, the record clearly indicates that Plaintiffs have no contacts at all with Defendant County.

In *Hague,* the Court provided that, in order to constitutionally exercise legislative jurisdiction, a state "must have a significant contact or significant aggregation of contacts, creating state interests, such that [application] of its law is neither arbitrary nor fundamentally unfair." *Hague,* 449 U.S. at 312–313, 101 S.Ct. 633. The *Hague* Court cited two additional cases for the proposition that if a state has only an insignificant contact with the parties and the occurrence or transaction, application of its law is unconstitutional. *Hague,* 449

U.S. at 311, 101 S.Ct. 633 (citing *John Hancock Mutual Life Ins. Co. v. Yates,* 299 U.S. 178, 57 S.Ct. 129, 81 L.Ed. 106 (1936); and *Home Ins. Co. v. Dick,* 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930)).

The record indicates that Plaintiffs have no contacts whatsoever with Defendant County. Therefore, applying *Hague* to the case at bar, clearly the application of the Ordinance against Plaintiffs is unconstitutional. Accordingly, it is

**ORDERED** that Plaintiffs' motion for summary judgment (Dkt.85) be **GRANTED,** Defendants' motion for summary judgment (Dkt.92) be **DENIED,** and the Clerk of the Court be **DIRECTED** to enter judgment for Plaintiffs.