AMERICAN CHARITIES FOR REASONABLE FUNDRAISING REGULATION, INC., et al., Plaintiffs,

v.

PINELLAS COUNTY, et al., Defendants.

No. 8:97–CIV–2058–T–17–TGW.

United States District Court, M.D. Florida, Tampa Division.

June 24, 2003.

---

Alison M. Steele, George Karl Rahdert, Rahdert, Steele, Bryan & Bole, P.A., St. Petersburg, FL, Clifford Perlman, Seth Perlman, Edward N. Mazlish, Perlman &

Perlman, New York City, Geoffrey W. Peters, Geoffrey W. Peters, P.C., Vienna, VA, Charles H. Nave, Charles H. Nave, P.C., Alexandria, VA, for American Charities for Reasonable Fundraising Regulation, Inc., The Creative Advantage, Inc., Norman W. Leahy, plaintiffs.

Carl E. Brody, Jr., Pinellas County Attorney's Office, Clearwater, FL, for Pinellas County, a political subdivision of the State of Florida, Nugent Walsh, as chairperson of the Charitable Solicitations Board of Pinellas County, Sheryl Lord, as Director of Consumer Protection of Pinellas County, defendants.

## ORDER ADOPTING REPORT AND RECOMMENDATION

KOVACHEVICH, District Judge.

This cause is before the Court on the report and recommendation (R & R) issued by Magistrate Judge Thomas G. Wilson on May 23, 2003 (Docket No. 172). The magistrate judge recommended that the Court award the plaintiffs $257,151.03 in attorneys' fees and $9,938.35 in related expenses and costs.

Pursuant to Rule 6.02, Rules of the United States District Court for the Middle District of Florida, the parties had ten (10) days after service to file written objections to the proposed findings and recommendations, or be barred from attacking the factual findings on appeal. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir.1982) (en banc). No objections have been filed to date.

### STANDARD OF REVIEW

■ When a party makes a timely and specific objection to a finding of fact in the report and recommendation, the district court should make a *de novo* review of the record with respect to that factual issue. 28 U.S.C. § 636(b)(1); *U.S. v. Raddatz*, 447 U.S. 667, 100 S.Ct. 2406, 65 L.Ed.2d 424 (1980); *Jeffrey S. v. State Bd. of Educ.*

*of State of Georgia*, 896 F.2d 507 (11th Cir.1990). However, when no timely and specific objections are filed, case law indicates that the court should review the findings using a clearly erroneous standard. *Gropp v. United Airlines, Inc.*, 817 F.Supp. 1558, 1562 (M.D.Fla.1993).

The Court has reviewed the report and recommendation and made an independent review of the record. Upon due consideration, the Court concurs with the report and recommendation. Accordingly, it is

**ORDERED** that the report and recommendation, dated May 23, 2003 (Docket No. 172) be **adopted** and **incorporated by reference**; and plaintiffs be awarded $257,151.03 in attorneys' fees and $9,938.35 in related expenses and costs.

## REPORT AND RECOMMENDATION

THOMAS G. WILSON, United States Magistrate Judge.

After being awarded summary judgment on their claim that enforcement of a Pinellas County ordinance against them was unconstitutional, the plaintiffs sought an award of attorneys' fees, related expenses and costs (Doc. 112). United States District Judge Elizabeth A. Kovachevich held that, because the plaintiffs prevailed in this action, they were entitled to recover their reasonable attorneys' fees and expenses (Doc. 141). The determination of an amount of reasonable attorneys' fees was referred to me for a report and recommendation (*id.*). Having considered the materials submitted and the governing legal standards, I recommend that the plaintiffs be awarded $257,151.03 in attorneys' fees and $9,938.35 in related expenses and costs.

I.

This action challenging the constitutionality of Pinellas County ordinance no. 93–

106, which regulates charitable solicitation within the county, was resolved in the plaintiffs' favor on summary judgment.[1] The facts of this case have been set forth in detail in two Orders by this court and an opinion by the Eleventh Circuit. *See American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County,* 221 F.3d 1211 (11th Cir.2000); 189 F.Supp.2d 1319 (M.D.Fla.2001); 32 F.Supp.2d 1308 (M.D.Fla.1998).

To briefly summarize, the three plaintiffs, American Charities for Reasonable Fundraising Regulation, Inc. ("ACRFR"), an association which represents professional fundraising consultants, The Creative Advantage, Inc., an agency which consults with charities on fundraising, and Norman W. Leahy, a copywriter for charities, filed suit under 42 U.S.C. § 1983 challenging the ordinance. In essence, the ordinance required that fundraising consultants and paid solicitors register with the County for a fee before performing charitable services within the county. The plaintiffs alleged that the ordinance was unconstitutional on the grounds that it violated the Commerce Clause, the First Amendment, and the Due Process Clause of the Fourteenth Amendment (Doc. 1). The plaintiffs sought a declaratory judgment that the ordinance was unconstitutional on its face and as applied to them, and requested an injunction prohibiting enforcement of the ordinance (*id.*).

After the parties engaged in some discovery, they filed motions for summary judgment. The court granted judgment for the defendants, rejecting the plaintiffs' contentions that the ordinance on its face violated the Commerce Clause, the First Amendment and the Fourteenth Amendment. *See American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, supra,* 32 F.Supp.2d 1308. The court declined to consider the

plaintiffs' as-applied due process claim, stating that it was not ripe for consideration since the County had not sought to enforce the ordinance against the plaintiffs. *Id.* at 1320–1321.

The plaintiffs appealed the judgment. The Eleventh Circuit agreed with the district court that the plaintiffs' "facial challenges to the Ordinance were unavailing." *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, supra,* 221 F.3d at 1214. However, it found that the plaintiffs' as-applied due process claim was ripe for review because the plaintiffs "offered sufficient evidence of a threat of enforcement." *Id.* The Eleventh Circuit also commented on the merits of the claim, stating that the County's application of the ordinance to the plaintiffs may violate the Due Process Clause because the record lacked evidence of sufficient minimum contacts between the plaintiffs and the County to justify its exercise of legislative jurisdiction. *Id.* at 1218. Consequently, the case was remanded for further development of the record regarding the plaintiffs' contacts with the County. *Id.*

After the parties conducted further discovery on this issue, each side filed a motion for summary judgment on the due process claim. The court granted the plaintiffs' summary judgment motion, finding that the application of the ordinance against the plaintiffs is unconstitutional because they lacked minimum contacts with the County to be subjected to its legislation. *American Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas County, supra,* 189 F.Supp.2d at 1332. That decision was not appealed.

Following the entry of judgment in their favor, the plaintiffs filed motions for attorneys' fees and expenses under 42 U.S.C.

---

**1.** The ordinance is codified in Pinellas County Code §§ 42–266 to 344.

1988 and for costs under 28 U.S.C.1920 (Docs. 112, 119, 143, 153). After finding that the plaintiffs were entitled to reasonable attorneys' fees, the determination of the amount of the fee award was referred to me for an evidentiary hearing and a report and recommendation (Doc. 141). Several other motions related to the attorneys' fee award (Docs. 136, 139, 143) were also referred for my consideration (Doc. 141; oral referral of 11/5/02).[2]

Accordingly, the matter was scheduled for an evidentiary hearing (Doc. 142). However, during the hearing it was determined that the taking of evidence was not necessary (*see* Doc. 151). Rather, due to concerns about the sufficiency of the fees documentation, the parties were given an additional opportunity to provide more detailed timesheets and objections, as well as legal memoranda on the controverted issues (*id.*). In this regard, the plaintiffs filed their Third Motion for Attorneys' Fees and Costs (Doc. 153). This motion replaces their previous fee applications (*id.* at p. 3).

The plaintiffs seek attorneys' fees of $430,959.24, and costs and expenses totaling $12,489.07 (Doc. 154, p. 14; Doc. 163, p. 13).[3] The defendants object to reimbursement for the majority of the attorneys' legal work, contending that the timesheets lack specificity and contain noncompensable, duplicative, and excessive expenditures of time (Docs. 133, 134, 148, 162, 169).

## II.

The plaintiffs seek reimbursement of their attorneys' fees under 42 U.S.C. § 1988(b), which provides that, "[i]n any action or proceeding to enforce a provision of section[ ]...1983...the court, in its discretion, may allow the prevailing party...a reasonable attorney's fee as part of the costs...." As indicated, Judge Kovachevich has already determined that the plaintiffs prevailed in this action and that, therefore, they are entitled to recover reasonable attorneys' fees (Doc. 141). Consequently, what remains to be determined is the amount of the attorneys' fees.

■ A reasonable attorney's fee is "properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson,* 465 U.S. 886, 888, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984). In this calculation, the court should exclude hours that were not reasonably expended. *Hensley v. Eckerhart,* 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). This "lodestar" may then be adjusted upward or downward based on other considerations. *Id.; Loranger v. Stierheim,* 10 F.3d 776, 781 (11th Cir.1994).

■ "The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours and hourly rates." *Norman v. Housing Authority of City of Montgomery,* 836 F.2d 1292, 1303 (11th Cir.1988). With respect to rates, an applicant may meet this burden by producing either direct evidence of rates charged

---

**2.** These motions are: Defendants' Motion to Strike Plaintiffs' Reply to Defendants' Motion in Opposition to Plaintiffs' Application for Attorneys' Fees (Doc. 136), Plaintiffs' Rule 60(b) Motion for Relief from the March 8, 2002, Order to Strike (Doc. 139) and Plaintiffs' Motion for Attorneys' Fees and Costs Incurred in Seeking Attorneys' Fees under Fed.R.Civ.P. 54(d) and for Permission to Retain Fee Counsel (Doc. 143).

**3.** These sums include $9,504.19 in fees and $4,531.34 in expenses sought by the plaintiffs in a supplemental motion (Doc. 163, p. 13).

The requested attorneys' fee award is based on remuneration at current rates. It does not include the plaintiffs' request to double the

under similar circumstances, or opinion evidence of reasonable rates. *Id.* at 1299. In addition, the court may use its own expertise and judgment to make an appropriate independent assessment of the value of an attorney's services. *Id.* at 1303. With respect to hours, if an applicant's documentation "is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart, supra,* 461 U.S. at 433, 103 S.Ct. 1933.

### A. Hourly Rates.

 A first step in the computation of the lodestar is determining the reasonable hourly rate. The prevailing market rate for similar services by similarly trained and experienced lawyers in the relevant legal community is the established basis for determining a reasonable hourly rate. *Duckworth v. Whisenant,* 97 F.3d 1393, 1396 (11th Cir.1996).[4] Services of paralegals and law clerks are also compensable at market rates. *Missouri v. Jenkins by Agyei,* 491 U.S. 274, 288–89, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989). The party seeking fees bears the burden of establishing the market rate and should present the court with "specific and detailed evidence" from which it can determine the reasonableness of the proposed rate. *Norman v. Housing Authority of City of Montgomery, supra,* 836 F.2d at 1303.

In this case, the plaintiffs seek compensation for the services of eleven lawyers and several legal assistants from four law firms that represented the plaintiffs in this action (Doc. 153, pp. 3–12). Geoffrey Pe-

ters, a solo practitioner based in Virginia and general counsel for ACRFR, was lead counsel and coordinated the work of all the attorneys in this case (Doc. 155, pp. 1, 3, 9). Charles Nave, also a solo practitioner in Virginia, worked as Peters' legal research assistant while he was a law student and was independently retained as counsel for ACRFR after his admission to the Virginia Bar (*id.* at pp. 9–10; Doc. 157). Nave participated in drafting the appeal and the plaintiffs' second motion for summary judgment (Doc. 157). Perlman & Perlman ("the Perlman firm"), a New York City law firm, initially handled the bulk of the work in the district court, including drafting the complaint and the first summary judgment motion (Doc. 156). Working on the case from the Perlman firm were attorneys Clifford Perlman, Seth Perlman, David Samuels, Edward Mazlish and Daniel Alcott (*id.* at p. 2). The plaintiffs also retained as local counsel the St. Petersburg firm of Rahdert, Steele, Bryan & Bole, P.A. ("the Rahdert firm") (Doc. 158). Working on the case from that firm were attorneys George Rahdert, Alison Steele, Penelope Bryan and Cynthia Hain (*id.* at p. 2).

The hourly rates for these individuals vary from $30 for legal research provided by Nave to $325 for Rahdert's services. The plaintiffs contend that the hourly rates charged are reasonable for services performed in the Tampa area by attorneys of similar skill, experience and reputation (Doc. 153, p. 4). The plaintiffs have submitted two affidavits supporting the rea-

---

lodestar, which is discussed *infra,* pp. 1328–29.

4. "The general rule is that the 'relevant market' for purposes of determining the reasonable hourly rate for an attorney's services is 'the place where the case is filed.'" *American Civil Liberties Union of Georgia v. Barnes,* 168 F.3d 423, 437 (11th Cir.1999). Therefore, if an applicant seeks to recover at nonlocal rates, "he must show a lack of attorneys practicing in that place who are willing and

able to handle his claims." *Id.* In this case, plaintiffs' counsel, with the exception of local counsel, practice outside Florida. Although lead counsel has attempted to justify the plaintiffs' use of out-of-town attorneys in this case (*see* Doc. 155, pp. 3–5), it is not necessary to address this issue because, as discussed *infra,* pp. 1311–12, the plaintiffs have presented evidence that counsel's rates are consistent with those charged by attorneys in this district.

sonableness of the attorneys' hourly rates (Docs. 129, 161).

Thomas Reynolds, an attorney with extensive experience litigating § 1983 civil rights actions and who has been qualified as an attorneys' fee expert on approximately one-hundred occasions, stated that he reviewed the time records and affidavits of each of the plaintiffs' attorneys and opined that, "given their respective skill, experience and reputation, each attorney has billed their services on this case at a reasonable rate" (Doc. 161, ¶¶ 1, 4, 5, 6). Reynolds further opined that the market rate in the Middle District of Florida for senior, experienced civil rights litigators is $285 to $350 per hour, and for junior attorneys the rate ranges from $150 to $195 per hour (id. at ¶ 7).

The plaintiffs also submitted an affidavit from Patricia Fields Anderson, an attorney with twenty years' experience and who specializes in complex civil matters (Doc. 129). She stated that she is familiar with the prevailing range of rates in this district and opines that the reasonable range of hourly rates for attorneys conducting this type of litigation in the Middle District of Florida is from $200 to $400, depending on the attorney's experience (id. at ¶¶ 3, 4).

■■■■ The defendants, furthermore, do not challenge the reasonableness of the hourly rates charged by Nave or the Rahdert firm (see Doc. 134, p. 19). Since the rates for Nave and the Rahdert firm are unopposed and, in my opinion, are not inconsistent with the hourly rates of comparably experienced attorneys in this district, they should be accepted.[5] However, the defendants do oppose the hourly rates for Geoffrey Peters and three members of the Perlman firm (id.).

■■■ Peters, the lead attorney in this case, requests a fee based on his current hourly rate of $250 (Doc. 155, Ex. A2). Peters has been practicing law since 1972 (id. at p. 1). He has, among other things, practiced as a criminal defense and civil litigation attorney (id. at pp. 1–3). For the past decade, Peters has specialized in providing legal services to nonprofit organizations and their fundraisers (id. at p. 2). During that time, he has litigated in various federal district courts on behalf of nonprofit clients and fundraisers (id.).

■■■ The Perlman firm has a national practice specializing in nonprofit law, including complex civil rights litigation (Doc. 156, p. 2). Perlman firm attorneys Clifford Perlman, Seth Perlman and David Samuels request a fee based on their current rates of $265, $275, and $275, respectively (id. at pp. 3–4).

Clifford Perlman, a partner with the firm, has over fourteen years of legal experience (id. at p. 3). He has written several articles on nonprofit legal topics and is recognized as an expert in the field (id.). Seth Perlman, the managing partner, has over seventeen years of legal experience (id. at p. 4). He co-authored a handbook on the regulation of charitable solicitations and serves as special counsel to several national associations of fundraising professionals (id.). David Samuels has over

---

5. Nave's hourly rate ranged from $30 to $50 as a legal research assistant. When he was retained as counsel for ACRFR on a contingency basis, his hourly rate increased to $100 (Doc. 157, p. 3). Nave's current hourly rate is $125 (id. at p. 4).

The hourly rate for George Rahdert, who has more than twenty-five years of legal experience, ranged from $280 to $325 (Doc. 158, p. 3). Alison Steele, a member of the Rahdert firm who has been practicing law since 1988, charged an hourly rate of $165 to $220 (Doc. 159). The rate of Penelope Bryan, a member of the Rahdert firm who has been practicing law since 1997, ranged from $90 to $140 (Doc. 160). Cynthia Hain, a former associate at the firm, billed at a $90 hourly rate (Doc. 158, p. 4).

twenty-three years of legal experience, including many years as a deputy chief for the Charities Bureau of the New York State Department of Law (*id.*).

The defendants object to the rates of these attorneys and suggest that they should be compensated at an hourly rate of $200 because "[i]n similar cases involving complex constitutional issues, the rates of constitutional scholars do not reach the levels that Plaintiffs' attorneys have requested" (Doc. 134, p. 9). In support of this contention, they have only offered an affidavit of Mark R. Brown, a professor of law at Stetson University, which he had submitted in a different case in support of his claim for fees in that case (*id.* at Ex. 2).[6] In the affidavit Brown opined that a reasonable rate for legal services he performed in a civil rights case during 1996–1997 was between $175 and $225 per hour (*id.* at ¶ 6).

However, Brown's affidavit carries little weight because it does not address at all the services of plaintiffs' counsel in this case. Moreover, Brown's affidavit only purports to suggest a reasonable rate for his own legal services which he performed in 1996 and 1997. Therefore, it unquestionably does not establish the current prevailing market rate. Consequently, Brown's affidavit fails to refute the plaintiffs' evidence that the hourly rates of Peters, Samuels and the Perlmans are reasonable and are consistent with the prevailing market rate in this area.[7] Accordingly, I recommend that the defen-

dants' objections to Peters' and the Perlman firm's rates be overruled.

▮▮ Plaintiffs' counsel also request reimbursement of fees at current rates, instead of historical rates, to compensate them for the delay in payment for their legal services (Doc. 154, pp. 10–11). Since Geoffrey W. Peters, P.C., Charles H. Nave, P.C., and the Perlman firm have yet to be compensated for services they rendered years ago, it is appropriate to calculate their fees at current rates.[8]

▮▮ The Supreme Court has approved the enhancement of fees to compensate attorneys for a delay in payment. *Missouri v. Jenkins by Agyei, supra,* 491 U.S. at 283, 109 S.Ct. 2463. In this regard, it explained:

> Our cases have repeatedly stressed that attorney's fees awarded under this statute [§ 1988] are to be based on market rates for the services rendered. Clearly, compensation received several years after the services were rendered-as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings. We agree, therefore, that an appropriate adjustment for delay in payment—whether by the application of current rather than historic hourly rates or otherwise—is within the contemplation of the statute.

---

**6.** Brown's affidavit regarded legal services he provided in *National People's Democratic Uhuru Movement and Alvelita Donaldson v. Darryl Stephens, Chief of the St. Petersburg Police Dept. and Pinellas County,* Case No. 96–2558–CIV–T–23C (Doc. 134, Ex. 2).

**7.** Indeed, extrapolating Brown's 1996–1997 hourly rate to the present arguably supports the plaintiffs' contention that their attorneys' current rates are reasonable.

**8.** It is noted that the Perlman firm has received $15,000 for their work at the district court level and another $9,000 for handling the appeal and subsequent litigation (Doc. 156, p. 7). This sum, however, is merely a small fraction of their fees in this case.

Fees for the Rahdert firm and Charles Nave's work as a legal research assistant should be reimbursed at historical rates because they were compensated in a timely manner.

*Id.* at 283–84, 109 S.Ct. 2463 (citations omitted); *see also Norman v. Housing Authority of City of Montgomery, supra,* 836 F.2d at 1302 ("[W]here there is a delay the court should take into account the time value of money and the effects of inflation and generally award compensation at current rates rather than at historic rates").

The defendants object to this enhancement on several grounds (Doc. 162, p. 4). First, they contend that this request was not asserted by the plaintiffs in their prior fee applications, and, therefore, it should be rejected as untimely (*id.* at n. 3). This is not accurate because the plaintiffs sought this enhancement in their first motion for fees (*see* Doc. 113, p. 15)(except local counsel, the firms that took this case "have had to wait years before seeing any return for their effort and investment. . . . [T]he time value of money is an appropriate factor to consider when enhancing the lodestar figure").

■ The defendants also argue that there has been no delay because payment has not yet been ordered by the court (Doc. 162, p. 4). This argument is meritless, however, because the delay is calculated from the date services are rendered. *See Missouri v. Jenkins by Agyei, supra,* 491 U.S. at 283, 109 S.Ct. 2463.

The defendants further argue that Judge Kovachevich has already declined to enhance the lodestar in this matter (Doc. 162, p. 4). However, the only enhancement factors expressly evaluated by Judge Kovachevich were (1) exceptional results and (2) the complexity and novelty of the legal issues (Doc. 141, p. 5). There is no indication that an enhancement for a delay in payment has been considered, let alone rejected.

Finally, the defendants argue that the delay enhancement is appropriate only in cases where there is a consent decree which delays payment for decades (Doc. 162, p. 4). The defendants, however, have cited no controlling legal authority in support of this contention. In any event, the Supreme Court has approved an enhancement for a delay in payment where there was no consent decree. *See Missouri v. Jenkins by Agyei, supra,* 491 U.S. at 274, 109 S.Ct. 2463. Moreover, a delay of "several years," not decades, warrants consideration of this enhancement. *See id.* at 283–284, 109 S.Ct. 2463.

In sum, there has been a substantial delay in compensating Geoffrey W. Peters, P.C., the Perlman firm and Charles H. Nave, P.C., for their services. The defendants, moreover, have failed to provide a persuasive reason why, under *Missouri v. Jenkins by Agyei* and its progeny, a delay enhancement is not appropriate in this case. Accordingly, these attorneys should be compensated for the delay in payment by calculating their fees using current rates. However, this enhancement should not apply to the Rahdert firm or to Nave's services as a legal research assistant because they were promptly compensated for their services.

Accordingly, the suggested hourly rates of plaintiffs' counsel are as follows:

| Counsel | Rate per hour |
|---|---|
| Peters | $250 |
| Samuels | $275 |
| Perlman, C | $265 |
| Perlman, S | $275 |
| Mazlish | $190 |
| Alcott | $190 |
| Charles Nave, P.C. | $125 |
| Nave, legal assistant | $30–$50 |
| Rahdert | $280–$325 |
| Steele | $165–$220 |
| Bryan | $ 90–$140 |
| Hain | $ 90 |

Contrary to the plaintiffs' frequent assertion, these are not "below market rates." Rather, with the exception of the rates for Nave, Bryan and Hain, they are near the top of the range of reasonable rates. Consequently, attorneys charging

the high rates are expected to perform their services with greater efficiency and less time. *See Ferland v. Conrad Credit Corp.,* 244 F.3d 1145, 1148 (9th Cir.2001); *Knop v. Johnson,* 712 F.Supp. 571, 578 (W.D.Mich.1989) ("because more experienced attorneys charge higher rates for their services, they are expected to perform legal work in an expedited manner").

 The defendants have also challenged the $135 hourly rate for the services of Carl Kabat, the Perlman firm's legal assistant (Doc. 169, Ex. 1). In this regard, Anderson opined that the market rate for paralegal services in this district is $50 to $60 per hour (Doc. 129, ¶ 5), and Reynolds commented that such services are billed at $75 to $95 per hour (Doc. 161, ¶ 7).

Although Kabat provided these services in New York, Kabat's rate should be calculated based upon the prevailing market rate for paralegals in this district. The affidavits of Reynolds and Anderson, as well as my experience in other cases, lead me to conclude that a rate of $70 per hour is the appropriate point within the range of the prevailing market rate. Accordingly, compensation for Kabat's services should be calculated at an hourly rate of $70.

B. *Reasonableness of the Number of Hours Expended.*

 The next step in the lodestar analysis is to determine what hours were reasonably expended on the litigation. In calculating this, the court should exclude excessive, unnecessary and redundant hours, and also time spent litigating discrete and unsuccessful claims. *Duckworth v. Whisenant, supra,* 97 F.3d at 1397. The plaintiffs seek compensation for more than 2,500 hours of work in this matter, which included lengthy pleadings, a motion to dismiss, some discovery, two rounds of summary judgment motions, and an appeal

(*see* Docs. 155–158; 164–167 (attorneys' timesheets)).

"The fee applicant bears the burden of establishing entitlement and documenting the appropriate hours...." *Norman v. Housing Authority of City of Montgomery, supra,* 836 F.2d at 1303. Thus, "fee counsel should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditure ought to be set out with sufficient particularity so that the district court can assess the time claimed for each activity." *Id.* The requirement to document time records adequately was iterated at the hearing on this matter, and, as previously indicated, the plaintiffs were given an additional opportunity to supplement their time records with greater detail to satisfy this obligation (*see* Doc. 151).

 Likewise, " '[o]bjections and proof from fee opponents concerning hours that should be excluded must be specific and 'reasonably precise'.' " *American Civil Liberties Union of Georgia v. Barnes, supra,* 168 F.3d at 428 (*quoting Norman v. Housing Authority of City of Montgomery, supra,* 836 F.2d at 1301). Thus, generalized statements that the time spent was unreasonable or unnecessary are not particularly helpful and not entitled to much weight. *Norman v. Housing Authority of City of Montgomery, supra,* 836 F.2d at 1301. Accordingly, a fee opponent's failure to explain exactly which hours he views as unnecessary or duplicative is generally viewed as fatal. *See Gray v. Lockheed Aeronautical Systems Co.,* 125 F.3d 1387 (11th Cir.1997). The defendants were also advised at the hearing on this matter that their objections to time records must be specific and accompanied by an explanation supporting the challenge (*see* Doc. 151). Consequently, unless clearly non-compensable, all hours as to which the defendants have not made a

sufficient objection should be accepted. As a corollary to this, because the defendants have not disputed the plaintiffs' computation of the amounts in the time records, the adjusted totals will be calculated simply by subtracting from the plaintiffs' totals the amounts that are determined to be excludable.

The defendants have identified five categories of hours that they contend should be excluded. Some of the objections have merit and some do not.

1. The defendants seek to exclude, under code "D," "duplicative" time spent by attorneys duplicating each other's efforts or performing the same work (Doc. 134, pp. 6–7). These objections, in large part, pertain to charges for conferences among the attorneys and the participation of several attorneys in the review, drafting, and editing of documents (see Doc. 162, defendants' timesheet objections). The defendants also challenge the number of attorneys involved in this case (Doc. 134, p. 6; Doc. 162, p. 6 n. 4).

██ It is not, however, necessarily objectionable for a party to have more than one lawyer. *Norman v. Housing Authority of City of Montgomery, supra,* 836 F.2d at 1302. Thus, "[t]here is nothing inherently unreasonable about a client having multiple attorneys, and they may all be compensated if they are not unreasonably doing the same work and are being compensated for the distinct contribution of each lawyer." *Id.; see also Johnson v. University College of University of Alabama in Birmingham,* 706 F.2d 1205, 1208 (11th Cir.1983), *cert. denied,* 464 U.S. 994, 104 S.Ct. 489, 78 L.Ed.2d 684 (1983); *Dowdell v. City of Apopka, Florida,* 698 F.2d 1181, 1188 (11th Cir.1983).

██ Furthermore, time spent in attorney conferences is generally compensable for each participant. *See National Ass'n of Concerned Veterans v. Secretary of Defense,* 675 F.2d 1319, 1337 (D.C.Cir.1982);

*Review Publications, Inc. v. Navarro,* 1991 WL 252962 (S.D.Fla.1991). Thus, "attorneys must spend at least some of their time conferring with colleagues, particularly their subordinates, to ensure that a case is managed in an effective as well as efficient manner." *National Ass'n of Concerned Veterans v. Secretary of Defense, supra,* 675 F.2d at 1337.

Although eleven lawyers participated in the prosecution of this case, three of those attorneys performed 80 percent of the work (Doc. 157, p. 7). Therefore, the number of attorneys in this case does not, in itself, show that the matter was overstaffed.

Furthermore, the division of labor among the plaintiffs' legal staff generally shows that they each made a distinct contribution to the case (see Doc. 155, pp. 8–11; Doc. 156, pp. 6–14; Doc. 157, p. 3). For example, with regard to the numerous court submissions, plaintiffs' counsel explained that, typically a junior attorney or law clerk would do most of the research and write a first draft, then other attorneys would review it and offer comments which were incorporated in subsequent drafts of the document (Doc. 163, pp. 8–9; Doc. 155, p. 17). Consequently, the fact that more than one attorney billed for drafting, editing or reviewing a document does not necessarily mean that the work was unreasonably duplicative. Additionally, this division of labor necessitates some attorney conferences. *See National Ass'n of Concerned Veterans v. Secretary of Defense, supra,* 675 F.2d at 1337.

Moreover, each law firm averred that it exercised billing judgment in this case (Docs. 155, 156, 157, 158). In particular, Peters stated that he excluded "hours that [he] felt were duplicative of other work ..." and that he "purposefully did not record many hours reviewing the work of others when [he] did not feel that [he]

made a substantive contribution" (Doc. 155, pp. 14–15). Clifford Perlman also stated that the Perlman firm made a concerted effort to avoid duplicative charges (Doc. 156, p. 3). As an example of this effort, Perlman stated that intra-firm telephone conferences and meetings were generally billed only by one attorney (*id.*). Nave also attested that he excluded time when he thought that it would not have been billed to other clients (Doc. 157, p. 2).

Therefore, under these circumstances, it is not appropriate to make an automatic reduction of hours for the participation of multiple attorneys in a conference or working on a particular task. Rather, in light of plaintiffs' attorneys' affidavits, the defendants had to provide some basis for concluding that the work challenged was unreasonably duplicative.

The defendants, however, provided few particularized objections in this regard. Thus, the defendants' basic approach is simply to note on the timesheets conclusory objections such as "duplicative" or "billed twice" and then make some general comments about this category in their memorandum. What the defendants have failed to do for the most part is make particularized objections to specific entries.

This failure prevents the court from determining whether an objection is meritorious. *See American Civil Liberties Union of Georgia v. Barnes*, *supra*, 168 F.3d at 428 ("'objections and proof from fee opponents' concerning hours that should be excluded must be specific and 'reasonably precise'"). Accordingly, where the defendants have objected to a time entry solely on the basis that more than one attorney participated in the task, or that a task is another attorney's "job," the objection is insufficient. Under these principles, the duplicative objections should be overruled with regard to the time records of Nave, Peters and the Rahdert firm. However, a total of $3,571.50 should be eliminated from the Perlman firm's time entries under this objection.[9]

In sum, the defendants' challenges regarding duplication were, for the most part, lacking in specificity. This does not mean, of course, that there was not duplication, but only that the defendants failed satisfactorily to identify it. To some extent, this may be because it is a difficult matter to ferret out. Consequently, I have the firm belief that there was significant duplication in the areas of editing, reviewing and conferencing that has not been eliminated.

**9.** In this connection, objections should be sustained on the basis that tasks were double-billed by an attorney. For example, the defendants asserted that the time entry "Telephone Consultation with Marilyn Price" was billed twice by Mazlish on 5/13/97. This activity appeared twice on this date and the Perlman firm's reply was not responsive to this contention.

Where the Perlman firm explained that a task was not double-billed, but rather took more than one day to complete, or the like, the objection should be overruled. However, there were many instances in which the reply was not responsive to the specific objection (*see, e.g.*, Doc. 165, Ex. B2B, reply ¶ 4 ("There is nothing improper about the manner in which the task in question has been described, recorded or billed")). In that cir-

cumstance, the duplicative objection should be sustained. Accordingly, time entries on the following dates should be discounted: 5/13/97; 6/4/98; 6/5/98; 5/13/99; 11/30/00; 1/29/01; 4/22/02. The time entries on 6/4/98, 6/5/98, 5/13/99, 11/3/00, and 1/29/01 are also deficient and should be non-compensable because they fail to describe adequately each task performed. All of these objectionable entries were by E. Mazlish, with the exception of C. Perlman's 4/22/02 entry.

Moreover, where an objectionable entry is "block-billed," i.e., grouped together with non-objectionable tasks without allocating the time spent on each task, the entire entry should be eliminated because the amount of time devoted to the objectionable task cannot be determined.

2. The defendants object under code "E" to "excessive" time charged for tasks performed in this case (Doc. 134, pp. 9–10). As the plaintiffs point out (Doc. 163, p. 7), in most instances the defendants have not provided reasons for concluding that each of the entries marked "excessive" contain an excessive amount of time.[10] Frequently, the only explanation that appeared on the time records was a conclusory comment such as "would not bill private client that much" or " 'expert' should not need that much time"(*see, e.g.,* Doc. 162, defendants' timesheet objections, Peters, 5/10/98, 5/19/98). Furthermore, they have generally made no attempt to indicate what a reasonable lesser number of hours would be, but simply seek to have all hours stricken. As previously indicated, conclusory objections are not sufficient. *See Gray v. Lockheed Aeronautical Systems Co., supra.*

The inadequacy of these objections is underscored by plaintiffs' attorneys' affidavits. Thus, Peters stated that he "refrained from recording time [he] considered excessive for any project" (Doc. 155, p. 15). Nave similarly attested that he excluded time that he thought was excessive (Doc. 157, p. 2). Perlman also stated that his firm "made a concerted effort . . . to minimize time billed for all of the services rendered . . ." and that it has "written off a great deal of its time already" (Doc. 165, p. 4). Plaintiffs' counsel also averred that, in their judgment, the time they charged was reasonable for attorneys of similar skill (Doc. 155, pp. 15, 17; Doc. 157, p. 2; Doc. 165, p. 4; Doc. 167, p. 1).

Therefore, in light of plaintiffs' attorneys' affidavits that the time billed was reasonable and that they eliminated excessive hours from their time records, the defendants were obligated to come forward with some basis for concluding that the time spent was excessive. Based on these principles, excessive objections against the Rahdert firm and Nave should be overruled.[11] A total of $500 and $1520 should be discounted from the time records of Peters and the Perlman firm, respectively, because they failed to respond adequately to a properly asserted objection.[12]

Again, the defendants' failure to identify excessive time, or to provide a reasonable formula for reducing excessive time, does not mean that the plaintiffs' claim does not include excessive hours. To the contrary, despite plaintiffs' attorneys' self-serving declarations, it is obvious to me that the plaintiffs' fee request does contain excessive time. For example, having been an appellate lawyer for seven years, I am certain that the main appellate brief in this case should not have required anywhere near the expenditure of 610.28 hours, particularly in light of the 339.28 hours spent preparing the first motion for summary judgment and the response to the defendants' summary judgment motion (*see* Doc.

---

10. Indeed, some of the "excessive" objections were, as the plaintiffs contend, knee-jerk reactions (*see, e.g.,* objection to Peters' charge of .1 for a telephone call on 6/1/98, because defense counsel "would not bill client that much" (Doc.162, defendants' timesheet objections, Peters, 6/1/98; Doc. 155, Ex. A2, 6/1/98)).

11. Objections to Nave's charges for clerical work, which the defendants labeled as "excessive," are discussed *infra,* pp. 1321–22.

12. In this regard, the defendants objected to time entries on 12/11/00 for "attendance" at depositions in Washington, D.C. For these tasks, Peters sought eight hours compensation and the Perlman firm charged fourteen hours. The defendants objected on the ground that the depositions only took six hours. Neither Peters nor the Perlman firm responded to this contention. Therefore, each should be credited for only six hours for attending those depositions.

157, p. 6). Similarly, the expenditure of 472.55 hours (or 19 percent of the total time) on the fee petition is excessive; this is the highest number of hours for any phase of the case except the appellate brief (*see id.*). Moreover, on this point it is no answer to say that the court invited a third fee application; if the first ones had been adequate, that would not have been necessary. In short, the time records clearly include excessive hours, but the defendants did not identify them, or provide a reasonable formula for reducing them.

3. The defendants object, under code "U" to "unnecessary" charges (*see* Doc. 162, defendants' timesheet objections). The defendants' basic approach here is simply to place the objection "unnecessary" beside the time entry and sometimes add a redundant comment such as there was "no need" or "no reason" for the service (*see, e.g., id.* at Nave timesheet objections, p. 5; Peters timesheet objections, p. 15). These objections fail to provide an adequate basis to discount that time. Therefore, because the defendants' "unnecessary" objections are unsubstantiated, or have been rebutted adequately by the plaintiffs, they should be rejected as to all counsel, except for one meritorious objection to a $25 entry in Nave's time records.[13]

4. The defendants seek to exclude under code "NS" time expenditures that are not identified adequately in the fee application (Doc. 134, pp. 8–9). The defendants argue that many time entries fail to describe sufficiently the tasks performed, which hindered their ability to determine whether those entries were objectionable (Doc. 134, p. 8; Doc. 162, defendants' timesheet objections). The defendants also argue under this category that many of the time entries fail to identify distinct, unsuccessful claims (Doc. 134, p. 12).

 It is axiomatic that "[t]he party who seeks payment must keep records in sufficient detail that a neutral judge can make a fair evaluation of the time expended, the nature and need for the service, and the reasonable fees to be allowed." *Hensley v. Eckerhart, supra,* 461 U.S. at 441, 103 S.Ct. 1933 (Burger, C.J., concurring). Therefore, "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.* at 433, 103 S.Ct. 1933.

The plaintiffs dispute that their time records lack specificity. Rather, they assert that "they have produced voluminous and specific explanations of how each quantum of time was spent" (Doc. 163, p. 6). However, this simply is not the case with regard to numerous time entries. Thus, although the plaintiffs have identified the phase of litigation related to each time entry, many entries contain very little detail as to how those hours were actually expended or provide only vague descriptions. Where the plaintiffs' replies have explained adequately the work performed, that time was not discounted. However, many of the plaintiffs' replies were insufficient or not responsive to the specific objection asserted by the defendants.[14] Consequently, for those entries, the reasonableness of the time expenditure cannot be determined.

In particular, many objections should be sustained as to conferences and telephone

---

**13.** The defendants should not be billed for researching the basic legal distinction between a question of law and fact (Doc. 157, Nave time records, 1/20/99).

**14.** For example, the defendants objected to a Perlman firm time entry on 4/7/98 for "prepa-

ration of documents for Geoff Peters" because there "was no explanation of what documents were prepared." The Perlman firm's non-responsive reply was essentially that "[t]here is nothing improper about the manner in which the task in question has been described, recorded, or billed."

calls because the time entry does not identify adequately the communication. This is of special concern in this case, where the plaintiffs seek reimbursement for a plethora of attorney conferences, many of which are described merely by reference to a particular phase of the litigation, such as "tel[ephone] call with E.M. re: complaint" (*see, e.g.,* Doc. 155, Ex. A2, 7/30/97). Especially where there are several conferences on the same topic or a conference is lengthy, it is imperative that further detail be given in order to determine the nature and need for the conference and, concomitantly, the reasonableness of the time expenditure. Two particularly troublesome examples in this regard are Peters' time records containing nine and one-half hours of attorney conferences described only as "discuss brief" (*see id.* at 4/21–4/22/99; 5/8/99) and Nave's time records showing a six-hour "conference call on draft 10" (*see* Doc. 157, Ex. C2, 6/24/99).[15] While it is not expected that discussions or other communications should be particularized in detail, under these circumstances, there should be a statement, albeit brief, of the persons participating in the conference and the issues that were discussed in order for the court to confirm the reasonableness of the time expenditure. *See, e.g., Mississippi State Chapter, Operation Push v. Mabus,* 788 F.Supp. 1406, 1417–18 (N.D.Miss.

1992); *see also In re Olson,* 884 F.2d 1415, 1429 (D.C.Cir.1989).

The plaintiffs additionally assert that more detailed information about their time records "was plainly available" to defense counsel, including "the opportunity to go through Plaintiffs' counsel's case files," but *defense counsel failed to avail himself of this information* (Doc. 163, pp. 4, 6–7; Ex. E, ¶ 11). This criticism is not persuasive. Thus, it needs to be clear after reviewing a time entry how the time was spent. The plaintiffs have provided no legal authority that it is the fee opponent's obligation to scrutinize the fee proponent's time records in order to assess their reasonableness. *See Hensley v. Eckerhart, supra,* 461 U.S. at 433, 103 S.Ct. 1933; *Norman v. Housing Authority of City of Montgomery, supra,* 836 F.2d at 1303.

Consequently, where the defendants have objected to the specificity of a time entry and the plaintiffs' reply is insufficient for the court to determine the task performed or the reasonableness of the time expenditure, that objection should be sustained. Under this principle, the following amounts should be excluded from the attorneys' claims:

| | |
|---|---|
| The Rahdert firm: | $ 1,465.00 [16] |
| Charles Nave: | $ 2,671.33 [17] |
| The Perlman firm: | $13,007.50 [18] |
| Geoffrey W. Peters, P.C.: | $28,175.00 [19] |

**15.** The attorneys' replies to these objections also lacked sufficient detail to assess the reasonableness of the time expenditures.

**16.** Objections should be sustained to the Rahdert firm's time records on the following dates: 9/15/97; 12/18/97; 12/28/97; 8/5/98; 8/7/98; 10/13/00; 10/18/00; 6/20/02.

**17.** Objections should be sustained to Nave's time records on the following dates: 1/10/99; 2/3/99; 4/20/99; 4/24–4/25/99; 4/28/99; 5/10–5/14/99; 5/16/–5/17/99; 5/20/99; 6/3/99; 6/10/99; 6/15–6/16/99; 6/21/99; 6/24/99; 7/5/99; 11/12/00; 4/2/01; 5/19/02; 5/20/02; 7/17/02.

**18.** Objections should be sustained to the Perlman firm's time records on the following dates: 7/31/97; 8/6/97; 3/23/98; 3/30/98; 3/31/98; 4/7/98; 5/26/99; 6/3/99; 6/7/99; 6/8/99; 6/15/99; 6/17/99; 6/24/99; 6/28/99; 8/2/99; 9/2/99; 8/14/00; 9/27/00; 4/3/01; 4/5/01; 4/6/01; 4/17/01; 12/19/01; 1/4/02; 1/10/02; 2/1/02.

**19.** Objections should be sustained to Peters' time records for the following dates: 4/26/97; 6/13/97; 6/25/97; 7/30/97; 8/6/97; 8/19/97; 8/25/97; 2/11/98; 3/23/98; 4/7/98; 5/4/98; 5/11/98; 5/14/98; 5/22/98; 5/27/98; 5/28/98; 6/5/98; 6/8/98; 6/9/98; 6/16/98; 6/24/98; 7/6/98; 7/14/98; 7/20/98; 7/21/98; 7/22/98; 11/20–11/21/98; 12/14/98; 4/21/99; 4/22/99;

The defendants also argue under the category "NS" that many of the time entries fail to identify distinct, unsuccessful claims for which the plaintiffs are not entitled to reimbursement (Doc. 134, p. 8; Doc. 162, defendants' timesheet objections). The need to identify, and exclude, time spent on the unsuccessful claims is discussed later, pp. 1322–28.

5. In addition, the defendants object under the code "NC" to "non-compensable" time expenditures (Doc. 134, pp. 10–11). The defendants assert that these charges "are non-compensable because they are improper, unnecessary or otherwise should not be billed to clients similarly situated" (*id.* at p. 10). There are various tasks that the defendants object to under this category.

The defendants first assert that a billing by Alison Steele for an October 19, 2000, mediation is not compensable because "no mediation was ever held in this matter" (*id.* at pp. 10–11). It was determined at the hearing that a conference between the parties and a judge did take place on that date and that an attempt was made to settle this case during that meeting. Apparently, the dispute over this time entry was merely a matter of semantics; defense counsel considered it a status hearing and plaintiffs' counsel called it a mediation (*see* Doc. 155, pp. 15–17). Regardless of its label, the circumstances reflect that it is a compensable charge.[20]

The defendants also seek to exclude time spent on the plaintiffs' fee petition. The defendants assert that the plaintiffs are not entitled to reimbursement for time spent drafting their Reply to the "Defendants' Motion in Opposition to Plaintiffs' Application for Attorneys' Fees" because it was stricken as an unauthorized filing violative of Local Rule 3.01(b) (Doc. 162, p. 3). Although the court initially struck the document as an improper reply to the plaintiffs' motion for attorneys' fees (Doc. 138), Judge Kovachevich reconsidered this ruling because the defendants mislabeled their response to the plaintiffs' request for attorneys' fees as a "motion." Consequently, the plaintiffs' "reply" is considered an authorized response to the defendants' "motion" for a reduction of attorneys' fees (Doc. 141, p. 1). Therefore, fees incurred in drafting this memorandum are recoverable.

The defendants also argue that the plaintiffs were not authorized to submit line-by-line responses in reply to the defendants' objections (Doc. 169, p. 2). This contention lacks merit because the plaintiffs were not precluded from responding to the defendants' objections in this manner (*see* Doc. 151, p. 2). The method the plaintiffs selected is not only acceptable, but is the most helpful in determining whether the defendants' line-by-line objections are meritorious.[21]

The defendants have also asserted under this category blanket objections to compensation for time spent on unsuccessful motions, including the plaintiffs' first motion for summary judgment and their Rule 59 motion (*see, e.g.,* Doc. 162, defendants' timesheet objections, Peters, 6/98; 11/98). However, time is not excluded simply because a motion is denied. *Hensley v. Eckerhart, supra,* 461 U.S. at 440, 103 S.Ct.

---

5/8/99; 5/13/99; 5/23/99; 6/3/99; 6/24/99; 7/2/99; 7/5/99; 8/15/99; 9/2/99; 12/5/99 12/6/99; 8/7/00; 10/18/00; 4/1/01; 4/4/01; 4/24/01; 5/28/01; 1/2/02.

**20.** The defendants' objections to Steele's research (Doc. 134, p. 11) similarly lack merit.

**21.** The defendants also argued that Peters' and Nave's affidavits in support of their attorneys' fee petition lacked an official notary seal and that the notary's name is allegedly indecipherable (Doc. 169, p. 2). However, the court's records do not suffer from these deficiencies.

1933; *Blum v. Witco Chemical Corp.*, 829 F.2d 367, 378 (3d Cir.1987). The defendants' short commentary fails to demonstrate that the failed motions reach the level of frivolousness. Consequently, objections solely on this basis should be rejected.

■ The defendants also assert that correspondence and telephone calls between the plaintiffs and their counsel are not compensable (*see, e.g.*, Doc. 162, defendants' timesheet objections, Peters, 12/05/00). Communications with the client are necessary. Thus, regular communication between counsel and the client is demanded by the rules of professional conduct. *See, e.g.*, Rule 4–1.4, Florida Rules of Professional Conduct ("A lawyer shall keep a client reasonably informed about the status of a matter..."). Therefore, time spent by counsel communicating with the client is compensable. *See, e.g., Review Publications, Inc. v. Navarro, supra*, 1991 WL 252962 at *6; *Knop v. Johnson, supra*, 712 F.Supp. at 578 ("[o]bviously, ... counsel ha[s] an ethical duty to communicate with their clients, and time spent on that task is [therefore] compensable"). The plaintiff, moreover, has cited no authority to the contrary. *See* Local Rule 3.01(b).

The defendants further contend that many of Charles Nave's time entries contain non-compensable secretarial or clerical work. In some of these instances, the plaintiffs admit that the work performed is clerical, but seek to justify the entry by stating that Nave was the lowest billing person on the legal team and, similar to a paralegal, he should be compensated for these tasks (Doc. 163, Ex. E, ¶¶ 127, 142; Doc. 157, p. 2).

■ The plaintiffs, however, have provided no legal authority for charging opposing counsel for clerical work, even at a paralegal rate.[22] Thus, costs associated with clerical tasks are considered overhead expenses and are not compensable in the attorneys' fee award. *See Allen v. United States Steel Corp.*, 665 F.2d 689, 697 (5th Cir.1982). Accordingly, fees generated by law clerks and paralegals are recoverable "only to the extent that the paralegal performs work traditionally done by an attorney." *Jean v. Nelson*, 863 F.2d 759, 778 (11th Cir.1988).

In this case, the defendants correctly assert that Nave's time records contain a substantial amount of time spent on clerical and secretarial work, such as gathering and filing materials, and formatting documents. Therefore, where it appears that the work performed was of a clerical nature, those charges should be rejected. Based on this principle, $5,867.60 should be eliminated from Nave's fee request.[23]

The defendants have also identified some other time entries that should be discounted because, for various reasons, the time expenditure is not compensable. Consequently, $75[24] should be discounted

---

**22.** Additionally, not all of the clerical work was billed at a paralegal rate. For example, Nave charged an hourly rate of $125 for "compiling a binder of documents for hearing" (Doc. 157, Ex. C2, 5/18/02). The plaintiffs admitted that the work was clerical in nature (*see* Doc. 166, Ex. C2, p. 38, 5/18/02 referencing Doc. 163, Ex. E, ¶ 142).

**23.** Charges for clerical/secretarial tasks should be deducted on the following dates: 3/28/99; 4/9/99; 4/19/99; 4/24/99; 5/24/99;

5/28/99; 6/3/99; 6/4/99; 6/15/99; 6/16/99; 6/19/99; 6/21/99; 6/27/99; 6/29/99; 8/15/99; 8/16/99; 4/9/01; 4/10/01; 4/23/01; 11/22/01; 1/3/02; 1/4/02; 5/18/02; 5/20/02; 5/28/02; 5/29/02; 5/30/02; 6/12/02; 6/17/02; 6/18/02.

**24.** The objections which should be sustained are a time entry on 7/17/02, which sought compensation for an unexplained discussion with a news reporter, and a $45 entry on 12/29/97, which the Rahdert firm agreed to withdraw.

from the Rahdert firm time records, $300 [25] should be eliminated from Peters' time records, and $2,774.78 [26] should be discounted from the Perlman billing records.

Finally, the defendants have also asserted that legal work related to the unsuccessful claims is not compensable. The plaintiffs argue that they are entitled to recover their fees for work on the unsuccessful claims because all the claims are related and they achieved an excellent result in this case (*see* Doc. 154, pp. 12–14).

 Where a prevailing plaintiff has succeeded on only some of its claims, time spent on "discrete and unsuccessful claims" should be deducted. *See Duckworth v. Whisenant, supra,* 97 F.3d at 1397–98. If, however, all of the claims are related, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation" and normally award a full compensatory fee for excellent results or a reduced fee for limited success. *Hensley v. Eckerhart, supra,* 461 U.S. at 435–36, 103 S.Ct. 1933.

 Under *Hensley,* claims are considered related if they are based on related legal theories or involve a common core of facts. *Id.* at 435, 103 S.Ct. 1933. The plaintiffs assert that all of the claims in this case are related because they share a common core of facts about "the Ordinance... and the nature of Plaintiffs' business" (Doc. 154, p. 12). This conclusory assertion is insufficient to avoid a reduction for time spent on discrete and unsuccessful claims.

 The plaintiffs prevailed on their as-applied due process challenge. They emphatically lost on their Commerce Clause and First Amendment claims; the court of appeals did not even think the plaintiffs' arguments were worthy of discussion. *See* 221 F.3d at 1214. Consequently, the defendants should not have to pay for the time the plaintiffs spent developing these unsuccessful arguments, at least where that time can be identified or reasonably approximated.

Contrary to the plaintiffs' assertion, prior to the remand, their constitutional arguments were not predicated upon some substantial body of facts that needed to be developed for the case as a whole. Indeed, the plaintiffs viewed their contentions as issues of law and considered discovery unnecessary (*see* Doc. 39, p. 36). As a result, only 2.4 percent of the total time was spent on pre-remand discovery (Doc. 157, p. 6). These circumstances do not support the contention that this case involved a common core of facts that rendered the due process argument interrelated with the Commerce Clause and First Amendment arguments.

*Duckworth v. Whisenant, supra,* demonstrates, rather, that the Commerce Clause and First Amendment arguments are distinct and unsuccessful claims as to which there should be a reduction of time. In *Duckworth,* the plaintiff brought a civil rights action alleging the use of excessive force during a processing into jail, but he

---

**25.** This sum pertains to time entries on 9/9/97 and 4/3/98 that Peters agreed to withdraw.

**26.** Upon objection by the defendants, the Perlman firm failed to show that the following time entries contain compensable time: 4/21/97 (fail to explain the content of these letters and their relevance to the case); 11/11/97, 12/1/97, 3/24/98, 7/6/99 (fail to explain in their reply Fitzibbons' role in this case); 4/10/98 (Perlman firm agreed to remove charge); 6/4/99, 6/10/99 (opposing party is not responsible for fees incurred in seeking an extension of time); 11/6/99 (who is Kocian?); 1/3/02 (who is Carol?); 5/15/02 (prepare and ship boxes to Florida is clerical).

received only a modest recovery. The court of appeals approved a reduction of hours spent on unsuccessful claims. In particular, although the plaintiff obtained a damage award, there was a reduction for time spent on certain aspects of the damage claims. 97 F.3d at 1398. Further, there was a reduction of time on failure-to-train claims, as well as on claims of malicious prosecution and a First Amendment violation. The unsuccessful elements of damages and the claim of failure-to-train clearly had a common core of facts with the successful damage award for excessive force. *Duckworth* thus shows that in this case the plaintiffs' discrete and unsuccessful claims involving the Commerce Clause and the First Amendment are not protected from a time reduction because they had some facts in common with the due process claim.

The plaintiffs notably expended a great deal of effort and resources pursuing the unsuccessful claims. Thus, until this case was remanded to the district court after the appeal, a substantial portion of the plaintiffs' presentation pertained to the facial constitutionality of the ordinance (*see, e.g.,* Doc. 39 (the eventually successful due process claim comprised only eight pages of a thirty-five page summary judgment argument in the initial motion)).

Therefore, a reasonable attorneys' fee award requires a reduction for time spent on the unsuccessful claims. *See Norman v. Housing Authority of City of Montgomery, supra,* 836 F.2d at 1302. This reduction may be accomplished by identifying specific hours spent on unsuccessful claims that should be eliminated or by simply reducing the award by some proportion. *Id.* In this case, both methods should be used.

Initially, plaintiffs' attorneys have identified in their fee application specific hours spent pursuing the unsuccessful claims and those hours should be eliminated in the following amounts:

| | |
|---|---|
| Peters: | $ 7,735.00 [27] |
| Rahdert: | $ 0 |
| Nave: | $ 4,924.32 [28] |
| Perlman: | $11,305.00 [29] |

These specific reductions, however, are not sufficient to produce a reasonable attorneys' fee award. Clearly, the time spent on the unsuccessful claims generated much greater fee amounts than these. Moreover, with these reductions the lodestar amount would be $321,438.79. In my view, such an award is too high to be reasonable. Consequently, in order to account more adequately for the time spent on the unsuccessful claims, a percentage reduction should also be made. For the following reasons, a reduction of 20 percent appears appropriate.

The plaintiffs have prepared a breakdown of the time and fees according to the phases of litigation (Doc. 157, p. 6). The plaintiffs' chart indicates that, prior to remand, there were three phases that concentrated on the submission of legal arguments: motions for summary judgments, plaintiffs' appellate brief, and plaintiffs' reply. The work on these three phases produced between 37.1 percent (historical

---

**27.** Time entries on the following dates should be discounted: 4/7/98; 4/9/98; 5/9/98; 5/10/98; 5/18/98; 5/19/98; 6/9/98.

**28.** Time entries on the following dates should be discounted: 2/9/99; 4/11/99; 4/12/99; 4/18/99; 4/30/99; 5/1/99; 5/2/99; 5/3/99; 5/16/99; 5/18/99; 5/20–5/28/99; 6/3/99; 6/4–6/6/99; 6/8–6/9/99; 6/17/–6/20/99; 7/4–7/5/99; 8/13–8/14/99.

**29.** Time entries on the following dates should be discounted: 6/9–6/11/97; 7/10/97; 7/24/97; 8/5/97; 8/19/97; 11/21/97; 11/24/97; 2/17/98; 3/12–3/13/98; 4/6/98; 5/7/98; 5/11/98; 5/13/98; 5/15/98; 5/18/98; 5/19/98; 5/3/99; 5/18/99; 7/2/99; 7/5/99.

rates) and 40.5 percent (current rates) of the fees that are claimed.[30]

Further, it is estimated that at least 60 percent of the time during these three phases was spent on the Commerce Clause and First Amendment arguments. Since these arguments would provide the plaintiffs the greatest relief, they obviously drew the most attention. Thus, as this court noted, they constituted five of the six claims, and twelve of the thirteen contentions (Doc. 59, pp. 6, 9). Moreover, with respect to the summary judgment motions, the plaintiffs devoted to the Commerce Clause and the First Amendment arguments about twenty-seven of thirty-five pages in their supporting memorandum (Doc. 39) and about eleven of fifteen pages in their opposition memorandum (Doc. 49). As to the appellate brief, an expenditure of less than 60 percent of the time on the Commerce Clause and First Amendment arguments would mean that more than 40 percent of the time was spent on the statement of facts, the due process argument, incidental portions of the brief, and all other tasks related to the filing of the brief. Such an expenditure of time is completely implausible since it would have required the plaintiff to spend more than 240 hours—or six weeks of more than forty *billable* hours per week—working on these matters. Similarly, the reply brief shows the predominance of the Commerce Clause and First Amendment arguments in that eleven pages were devoted to legal argument on Commerce Clause and First Amendment issues while there were only six pages of legal argument on the due process claim. These circumstances show that it is conservative to estimate that during the three phases under consideration at least 60 percent of the time was spent on the Commerce Clause and First Amendment arguments.

In short, between 37.1 percent and 40.5 percent of the claimed fees were produced during the three phases, and at least 60 percent of the time during those periods was spent on the Commerce Clause and First Amendment arguments. Thus, it is fair to say that a minimum of between 22 percent and 24 percent of the fees were the product of the Commerce Clause and the First Amendment arguments.

It is recognized that a reduction of $23,964.32 has already been made based upon an identification of specific hours spent on the unsuccessful claims, and that this amount is almost 7 percent of the lodestar figure before the reduction of specific hours for unsuccessful claims. Nevertheless, for several reasons, this reduction does not justify setting the across-the-board reduction percentage somewhere between 15 percent and 17 percent.

First, the estimate of "at least" 60 percent as the time spent on the unsuccessful claims is most likely on the low side. The time spent on the critical and more rewarding Commerce Clause and First Amendment claims was probably significantly higher.

Further, the evaluation of the unsuccessful claims did not include any time spent on the pre-complaint and complaint phase. Obviously, significant research on the Commerce Clause and the First Amendment claims was conducted at that stage. If only half of the time was spent on developing those issues, that time would have produced about another 4 percent of the fees (*see* Doc. 157, p. 6).

---

**30.** Because the percentage reduction will be applied directly to a lodestar amount, the percentages of fee amounts should be considered, rather than the percentages of hours.

It is also noted that the percentages would seemingly be slightly reduced as a result of the submission of supplemental requests for fees concerning the fee application.

In addition, as previously pointed out, the hour-by-hour examination has not adequately eliminated charges for duplicative and excessive work. While that problem was ameliorated to some extent by the reductions based upon non-specific time entries, there clearly remain substantial charges for work that was duplicative, excessive, or both. The overall percentage reduction cures this problem and yields a reasonable attorneys' fee award.

The lodestar amount before the percentage reduction due to the unsuccessful claims is therefore computed as follows:

| Firm | Amount Claimed [31] | Amount Excluded [32] | Amount Allowed After Specific Exclusion |
|------|---------------------|----------------------|------------------------------------------|
| Rahdert firm | $ 24,382.00 | $ 1,540.00 | $ 22,842.00 |
| Geoffrey W. Peters, P.C. | $128,785.55 | $36,710.00 | $ 92,075.55 |
| Perlman firm | $195,056.46 | $33,400.78 | $161,655.68 |
| Charles Nave | $ 58,353.81 | $13,488.25 | $ 44,865.56 |
| TOTAL | | | $321,438.79 |

As explained, there should further be an overall reduction of 20 percent. This reduction is appropriately viewed as a part of the calculation of the lodestar amount since it pertains to the unsuccessful claims (and is also supported by reference to duplicate and excessive charges). However, regardless of whether it is viewed as part of the calculation of the lodestar amount, or as an adjustment to it, the result is the same.

With the 20 percent reduction, the lodestar amounts are:

| Firm | Amount Allowed After Specific Exclusions | Discounted Total |
|------|-------------------------------------------|------------------|
| Rahdert firm | $ 22,842.00 | $ 18,273.60 |
| Geoffrey W. Peters, P.C. | $ 92,075.55 | $ 73,660.44 |
| Perlman firm | $161,655.68 | $129,324.54 |
| Charles Nave | $ 44,865.56 | $ 35,892.45 |
| TOTAL | | $257,151.03 |

### III.

■ Both the plaintiffs and the defendants assert that an adjustment of the lodestar is appropriate in this case. The defendants seek a reduction of the lodestar based on the plaintiffs' partial success in this case and alleged violations of Rule 11 of the Federal Rules of Civil Procedure (Doc. 134, pp. 17–19). The plaintiffs request an enhancement of the lodestar on five grounds: (1) exceptional success, (2) the novelty and difficulty of the legal question presented, (3) the contingent nature of the case, (4) the delay in payment and (5) the purported intransigence of defense counsel (Doc. 120, pp. 15–19).

---

31. The amount claimed was computed based on historic rates for the Rahdert firm and Charles Nave's work as a legal assistant. It was based on current rates for Geoffrey W. Peters, P.C., the Perlman firm, and Charles Nave, P.C. For convenience, Nave's work as a legal assistant and as counsel are combined.

32. Amounts deducted were calculated at the historic rate for the Rahdert firm and Nave's work as a legal assistant. Deductions for Geoffrey W. Peters, P.C., the Perlman firm, and Charles Nave, P.C., were calculated at current rates. The hourly rate for Kabat, Perlman's paralegal, was computed, as previously indicated, at an hourly rate of $70.

The defendants assert that a reduction of the lodestar is appropriate to account for the plaintiffs' limited success in this case (Doc. 134, p. 17). As discussed above, a percentage reduction is warranted to account for the numerous hours of work performed on the unsuccessful claims that were not identified in the time records. No further reduction is justified as a result of limited or partial success. Rather, the plaintiffs' partial success simply provides an alternative basis for the 20 percent reduction. Thus, even if, as the plaintiffs contend, all the claims are interrelated and have a common core of facts, the 20 percent fee reduction for the unsuccessful claims is independently warranted because the plaintiffs achieved only partial success in this case. *Hensley v. Eckerhart, supra,* 461 U.S. at 436, 103 S.Ct. 1933.

 "[T]he degree of the plaintiff's success in relation to the other goals of the lawsuit is ... critical to the determination of the size of a reasonable fee...." *Texas State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 790, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989). Therefore, a fee produced by the lodestar method may be excessive if "a plaintiff has achieved only partial or limited success" and that is true even where the plaintiffs' claims are interrelated. *Hensley v. Eckerhart, supra,* 461 U.S. at 436, 103 S.Ct. 1933. While the plaintiffs' victory in this case is not accurately called "limited success," it clearly constitutes merely "partial success."

In this case, the failure of the plaintiffs' constitutional claims precluded them from achieving the full measure of success they

sought in the lawsuit. Thus, in the "Relief Requested" section of their complaint, the plaintiffs sought a "declaration that ... the Pinellas County Ordinance on [its] face and as applied violat[es] the First and Fourteenth Amendments to the United States Constitution, as well as ... the Commerce Clause contained in Article I, Section 8, of the United States Constitution," and a "permanent injunction enjoining the enforcement of...the Pinellas County Ordinance by Defendants, their agents, and employees" (Doc. 1, p. 26, ¶ 130A, B). That relief was not obtained. Indeed, not only did the plaintiffs fail to obtain a ruling that ordinances like the County's violated the Commerce Clause or the First Amendment, they are now faced with a decision from the court of appeals establishing that such ordinances do not contravene those constitutional provisions. While the plaintiffs did procure a ruling that the ordinance could not be applied to them because of insufficient contacts with Pinellas County, the ordinance remained standing after the conclusion of the case and could be applied to them if they do develop minimum contacts with the County.[33]

The plaintiffs, therefore, achieved only partial success. Consequently, a lodestar amount is subject to being reduced for that partial success even if all the claims are interrelated. In other words, the plaintiffs' fee award can be reduced for distinct and unsuccessful claims in accordance with *Duckworth v. Whisenant, supra,* or it can be reduced for partial success even if the claims are too interrelated to permit re-

---

**33.** Furthermore, the plaintiffs' contention that Judge Kovachevich recognized that they achieved "precisely and fully the relief sought at the outset" is misleading (Doc. 154, p. 11 n. 52). Thus, the thrust of Judge Kovachevich's Order was that the plaintiffs were the prevailing party because the relationship be-

tween the parties was altered (Doc. 141, pp. 3–4). This finding "brings the plaintiff only across the statutory threshold" and does not delineate "what fee is reasonable." *Hensley v. Eckerhart, supra,* 461 U.S. at 433, 103 S.Ct. 1933.

duction under *Duckworth*. Thus, in all events, a fee reduction is warranted.

The defendants have suggested across-the-board reductions of 50 or 75 percent (Doc. 134, pp. 11, 15). The defendants, however, provide no basis for these figures. In contrast, the 20 percent reduction has, as previously explained, a principled basis and should therefore be employed. This is so regardless of whether the reduction is based on a theory of distinct and unsuccessful claims or a theory of partial success. There is no justification, however, for taking a double reduction by using both theories.

The defendants have also requested a reduction of the lodestar based upon a purported violation of Rule 11 of the Federal Rules of Civil Procedure (Doc. 134, pp. 17–20). The defendants assert as sanctionable conduct plaintiffs' attorneys' representations that settlement offers were made to defense counsel orally and that defense counsel discussed this litigation with one of the plaintiffs (*see id.* at pp. 17–18). Defense counsel asserts that he "has no recollection of [these] statements alleged by Plaintiffs and their counsel . . ." and that such claims were made in an "attempt to poison the Court in its review of this matter" (*id.*). However, defense counsel's lack of recollection is not a basis for imposing Rule 11 sanctions. Furthermore, these allegations are irrelevant to the computation of a reasonable attorneys' fee. In any event, the request cannot be considered because it is procedurally defective. *See* Rule 11(c)(1), Fed. R. Civ.P. (requiring, among other things, that a request for Rule 11 sanctions be placed in a separate motion). Therefore, the request for a reduction based upon Rule 11 should be denied.

The plaintiffs have requested an enhancement of two times the lodestar based upon: (1) exceptional success, (2) the nov-

elty and difficulty of the legal question presented, (3) the contingent nature of the case, (4) the delay in payment, and (5) purported intransigence of defense counsel (Doc. 120, pp. 15–19).

The request for an enhancement due to the delay in payment has already been found meritorious with regard to three of the law firms and was included in the calculation of the lodestar. With regard to the plaintiffs' contentions that they are entitled to an enhancement based upon exceptional results and the complexity and novelty of the issues in this case, Judge Kovachevich has already considered these factors and rejected them (Doc. 141, p. 5). Specifically, it was found that "no exceptional results have been proven," and that the complexity of the issues is accounted for in the lodestar (*id.*). In sum, the court found that "[i]t would be a windfall to Plaintiffs' attorneys if [it] were to award an enhancement" based on these arguments (*id.*). The plaintiffs have not provided any basis for reconsideration of these findings. Accordingly, a fee enhancement is not justified on either of these grounds.

 The plaintiffs also assert that the contingent nature of this case warrants an enhancement (Doc. 120, p. 17). However, "the Supreme Court determined that enhancement for contingency is not permitted under federal fee-shifting statutes." *McKenzie v. Cooper, Levins & Pastko, Inc.,* 990 F.2d 1183, 1186 (11th Cir.1993)(*citing City of Burlington v. Dague,* 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992)). Therefore, such an enhancement is not appropriate.

Finally, the plaintiffs seek a fee enhancement because of the defendants' intransigence (Doc. 120, pp. 18–19; *see also* Doc. 154, pp. 5–8). In this connection, the plaintiffs argue that the defendants unreasonably refused settlement offers and

needlessly delayed discovery (*id.; see also* Doc. 155, pp. 7–8, 11–13). Of course, defense counsel disputes these allegations (Doc. 134, p. 17; Doc. 162, p. 3). In any event, the plaintiffs have not cited any legal authority for enhancing a fee award due to the opposing party's intransigence. Moreover, that factor seemingly would be reflected in the number of hours expended and, therefore, compensated in the lodestar. *See Pennsylvania v. Delaware Valley Citizens' Council for Clean Air,* 483 U.S. 711, 730, 107 S.Ct. 3078, 97 L.Ed.2d 585 (1987)("The matter may have been difficult, wearing, and time-consuming, but that kind of effort has been recognized in the lodestar award"). Therefore, an enhancement on this basis should be denied.

In sum, after considering the materials submitted and the governing legal standards, I recommend that the plaintiffs be awarded attorneys' fees of $257,151.03. This sum, moreover, gives due consideration to any public benefit flowing from this case.

## IV.

The plaintiffs also seek $12,489.07 in litigation expenses and costs as part of their attorneys' fee award under § 1988 and under 28 U.S.C. § 1920 (Doc. 155, Ex. A3; Doc. 156, Ex. B3; Doc. 157, Ex. C3; Doc. 160, Ex. D3; Doc. 164, Ex. A4; Doc. 165, Ex. B4; Doc. 167, Ex. D4).[34] The defendants object to many of these expenses on the grounds that they are not recoverable or are unsubstantiated (Docs. 162, 169).

 Reasonable litigation expenses are ordinarily included in an award of a statutory attorneys' fee. *See Dowdell v. City of Apopka, Fla., supra,* 698 F.2d at 1190. Thus, "with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, dur-

ing the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988." *American Civil Liberties Union of Georgia v. Barnes, supra,* 168 F.3d at 438.

 In this case, plaintiffs' attorneys seek reimbursement for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, facsimiles, Federal Express, and courier services (Doc. 155, Ex. A3; Doc. 156, Ex. B3; Doc. 157, Ex. C3; Doc. 160, Ex. D3; Doc. 164, Ex. A4; Doc. 165, Ex. B4; Doc. 167, Ex. D4). These types of litigation expenses are recoverable as part of an attorneys' fee award under § 1988. *See American Civil Liberties Union of Georgia v. Barnes, supra,* 168 F.3d at 438; *Cappeletti Bros. Inc. v. Broward County,* 754 F.Supp. 197, 198 (S.D.Fla.1991) (the "nonstatutory costs subsumed within the reasonable attorney's fee could include compensation for postage, long distance calls, photocopying, travel, paralegals, expert witnesses, and computerized legal research").

In support of an award of expenses, each firm included summaries of their expenses and supporting affidavits. Additionally, three of the firms submitted supplementary requests for expenses, which pertain to costs incurred after the third attorneys' fee motion was filed.

First, Peters seeks reimbursement for expenses totaling $1,487 (Doc. 155, pp. 14–15 & Ex. A3). The defendants do not object to these expenses (Doc. 162, p. 7). Accordingly, Peters should be reimbursed for them in full.

The Perlman firm submitted a request for expenses totaling $3,462.54 (Doc. 156, Ex. B3). The defendants have made a blanket objection to reimbursement of any

---

**34.** The plaintiffs do not delineate the expenses recoverable under each statute, but this distinction does not appear to be significant in this case.

of these expenses on the grounds that the expenses "are not dated" and that "these expenses are non-specific, for instance, 'Telephone' in the amount of $1.30 could be any telephone expenses not necessarily related to this particular action" (Doc. 162, p. 7).

The defendants' blanket and conclusory objection to all of the Perlman firm's expenses is inadequate. *Cf. American Civil Liberties Union of Georgia v. Barnes, supra,* 168 F.3d at 428 (objections and proof must be specific and "reasonably precise"). As for the defendants' concern that these expenses may have been incurred in another action, Clifford Perlman avers that the requested expenses were incurred in connection with this case (*see* Doc. 156, pp. 1, 6, 14). Moreover, the defendants have not provided legal authority holding that a request for expenses should be denied if the expenses are not dated. Consequently, this non-specific, blanket objection should be overruled.

Nave seeks compensation for expenses totaling $1,473.40 (Doc. 157, p. 4; Ex. C3). The defendants object to one of Nave's expenses: a $67.91 charge for "toner" for his printer (Doc. 162, p. 7). A toner cartridge is an office supply, which should be subsumed in an attorney's overhead costs and, therefore, is not compensable. *See Bridges v. Eastman Kodak Co.,* 1996 WL 47304, *15 (S.D.N.Y. Feb.6, 1996), *aff'd,* 102 F.3d 56 (2d Cir.1996); *Hertz Corp. v. Caulfield,* 796 F.Supp. 225, 230 (E.D.La. 1992). Accordingly, Nave should be compensated in the amount of $1,405.49 for expenses incurred in this matter.

The Rahdert firm seeks reimbursement for expenses totaling $1,534.79 (Doc. 158, p. 3; Doc. 160, Ex. 3). The defendants assert no objection to these expenses (Doc. 162, p. 7). Accordingly, the Rahdert firm

should be compensated for these expenses in full.

Additionally, as indicated, three of the law firms submitted supplementary requests for expenses incurred in this matter (Docs. 164, Ex. A4; 165, Ex. B4; 167, Ex. D4). They appear to be expenses incurred after the filing of the third attorneys' fee motion. The defendants have posed specific objections to several of these expenses.

■■■ In Peters' supplemental request, he seeks $1,260 for the services of the fee expert, Thomas Reynolds (Doc. 164, Ex. A4).[35] Reynolds reviewed the time records of plaintiffs' counsel and opined on the market rate for comparable attorneys in this district (*see* Doc. 161). The defendants object to reimbursement of Reynolds' fee, asserting that "[t]his Court specifically determined that expert assistance was not necessary" (Doc. 169, Ex. 1). The defendants give no record citation for this contention. In any event, this matter has not yet been resolved by the court. Rather, it was referred to me for a recommendation as to its disposition (*see* Docket, 11/5/02 oral referral).

I recommend that the plaintiffs be reimbursed for this expense. Reasonable fees incurred in litigating a fee dispute are compensable. *See Jonas v. Stack,* 758 F.2d 567, 568 (11th Cir.1985). In this case, the hourly rates for plaintiffs' counsel were placed in dispute by the defendants and Reynolds' affidavit was helpful in resolving this disagreement. Therefore, it was reasonable for the plaintiffs to retain a fee expert to support their position that their lawyers' hourly rates were reasonable.

■■■ Rahdert's supplemental expense request seeks $531.65 for postage, photocopying, facsimiles and long-distance tele-

---

**35.** Although this is more appropriately addressed in the attorneys' fee section, because the plaintiffs presented it as an expense, it is discussed here.

phone charges (Doc. 167, Ex. D4). The defendants object to $486.25 for photocopies, stating that "[t]here is no explanation as to the purpose of the copy charges, especially where they are so extensive" (Doc. 169, Ex. 1). This is a substantial expense and the defendants are entitled to an explanation of these charges. *See Lee v. American Eagle Airlines, Inc.,* 93 F.Supp.2d 1322, 1335–36 (S.D.Fla.2000); *Cf. Norman v. Housing Authority of City of Montgomery, supra,* 836 F.2d at 1303. Since no explanation of these expenditures has been provided by plaintiffs' counsel, this expense should be disallowed. The defendants do not object to the Rahdert firm's other expenses which total $45.40 and, therefore, they should be reimbursed.

The Perlman firm seeks in its supplement $2,739.69 for photocopying, computer legal research, travel, postage, and telephone expenses (Doc. 165, Ex. B4). The defendants object to the Federal Express charge for sending the case files to Tampa, contending that the files should have instead been "flown in with the attorney" (Doc. 169, Ex. 1). It is unreasonable to expect the attorneys to carry boxes of voluminous documents with them (and it may not have been physically feasible). Therefore, this objection should be overruled.

The defendants also object to $278 for photocopies because "[t]here is no explanation as to the purpose of the copy charges" (*id.*). For the reasons stated previously, this charge should be rejected because the defendants are entitled to an explanation of this significant expenditure. The defendants also object to reimbursement for Westlaw computer research. This objection should be sustained because there is no description at all for the computer research for which they seek over $1,600 in compensation. *See Hensley v. Eckerhart, supra,* 461 U.S. at 437, n. 12, 103 S.Ct.

1933; *Wales v. Jack M. Berry, Inc.,* 192 F.Supp.2d 1313, 1330 (M.D.Fla.2001).

The defendants also challenge the Perlman firm's request for reimbursement for travel to Tampa, stating that "[t]here was no reason for attorneys to be present at the hearing in Tampa where Plaintiffs were already represented by three separate attorneys at that hearing" (Doc. 169, Ex. 1, p. 1). However, since the attorneys' fee hearing was scheduled as an evidentiary hearing and the Perlman firm played a major role in this case, it was appropriate for them to attend this hearing. Therefore, this objection should be overruled.

Finally, the defendants object to Federal Express charges totaling $24.60 because there is "[n]o explanation as to [the] purpose of these charges" (Doc. 169, Ex. 1, p. 1). As previously noted, an explanation for the expense should have been provided. Because it was not, this objection should be sustained. Therefore, the Perlman firm should be reimbursed $743.13 in supplementary expenses.

In sum, it is suggested that the plaintiffs be awarded expenses and costs as follows:

| Firm | Amount Sought | Amount Awarded |
|---|---|---|
| Geoffrey Peters, P.C. | $2,747.00 | $2,747.00 |
| The Perlman firm | $6,202.23 | $4,205.67 |
| The Rahdert firm | $2,066.44 | $1,580.19 |
| Charles Nave, P.C. | $1,473.40 | $1,405.49 |
| Total Expenses: | | $9,938.35 |

## V.

In conclusion, for the reasons stated, it is recommended that the plaintiffs' third motion for attorneys' fees (Doc. 153) be granted to the extent that the plaintiffs be awarded attorneys' fees in the amount of $257,151.03 and expenses and costs totaling $9,938.35.

It is further recommended that the plaintiffs' motion for attorneys' fees incurred in seeking attorneys' fees and for permission to retain fee counsel (Doc. 143)

be granted to the extent that the plaintiffs be reimbursed for the cost of fee expert Thomas Reynolds. Otherwise, this motion is moot.

Finally, based on the discussion above, pp. 30–31, it is recommended that the plaintiffs' motion for relief from the March 8, 2002, order to strike its reply (Doc. 139) be granted. Accordingly, it is appropriate to deny the defendants' motion to strike reply to motion in opposition to plaintiffs' application for attorneys' fees (Doc. 136). Dated: May 23, 2003.